Kansas City Cable Railway Company, Appellant,
v. City of Kansas *et al.*, Respondents.

Kansas City Court of Appeals, February 6, 1888.

1. Practice—Injunction—Premature Appeal—Case Adjudged. The rule of law is well established in this state, that an appeal does not lie from the mere refusal to grant a temporary injunction, without more ; or from the action of the trial court in merely dissolving the temporary injunction.     But in this case the court not only refused the temporary writ, but also dismissed the petition. This was a final disposition of the case which entitled the plaintiff to appeal.

2. ———  ——— Stay of Proceedings of a Criminal Character Never Granted.—It is also well-established doctrine that courts of equity never interfere to stay proceedings of a criminal character, as such courts deal only with civil and property rights.     This rule is applied to proceedings under city ordinances, enforceable, as this is, by fine, with consequent liability to imprisonment. But as to cases purely civil in their character it is within the province of a court of equity, by injunction, to protect the property-owner against unauthorized invasions.

Appeal from Jackson Circuit Court, Hon. James H. Slover, Judge.

*Affirmed.*

The case is stated in the opinion.

Johnson & Lucas, for the appellant.

I.  The ordinance complained of violates the contract between plaintiff and defendant in section 5, ordinance 24,154, that " all alterations or amendments be general and binding on all other street railways in the city and those owning and operating the same, whether corporation or natural person." Const. Mo., art. 2, sec. 15 ; *State v. Miller*, 66 Mo. 342.   In Cooley's Constitutional Limitations, page 677, section 577, the author uses this language:  "The regulations must have ref-

erence to the comfort, safety, or welfare of society; they must not be in conflict with any of the provisions of the charter. And they must not, under pretense of regulation, take from the corporation any of the essential rights and privileges which the charter confers." Tested by the above rule appellant contends that one of the rights and privileges guaranteed to it, in its charter, was, that all alterations should be general and binding on all street railroads, which the ordinance in question does not do, but applies only to appellant and imposes unjust and unfair burdens on it for the benefit of other corporations. And again, page 678, section 578, the same author : "And even a provision in a corporate charter * * * to modify or repeal it would not authorize a subsequent act which would have the effect to appropriate a portion of the corporate property to public use." See also : Tiedeman's Limitations Police Power, 574; *Miller v. Railroad*, 21 Barb. [N. Y.] 513.

II. The ordinance also violates the provision of the constitution, that no private property shall be taken for private use. Const. of Mo., art. 2, sec. 20. The plaintiff is compelled to keep watchmen, and no other road is required to do so. The expense should, at least, be apportioned. *River Co. v. Beler*, 77 Mo. 91 ; Cooley's Const. Lim., sec. 580 ; *Railroad v. Railroad*, 1 Allen [Mass.] 552 ; 4 Allen [Mass.] 198.

III. The ordinance is void as being subversive of the guarantee that private property shall not be taken for public use without just compensation. Const. of Mo., art. 2, sec. 21. The effect of the ordinance is to compel plaintiff, at its own expense, to police the city, and is a taking of private property for public use without just compensation. *Miller v. Railroad, supra.*

IV. The ordinance is in conflict with the constitutional guarantee that no person shall be deprived of his property without due process of law. Const. of Mo., art. 2, sec. 30. The effect of the ordinance is to deprive plaintiff of its property by requiring plaintiff to keep

a watchman for the benefit of the property of rival corporations. In all cases of like character the ordinance applies to all persons engaged in the same business, and provides for apportionment of expense.

V. The ordinance is void. It makes special and unjust discrimination against plaintiff. Dillon Mun. Corp. [2 Ed.] p. 370, secs. 256 and 637; *White v. Mayor*, 2 Swan [Tenn.] 364; *St. Louis v. Spiegel*, 90 Mo. 592; *New Orleans v. Bleneau*, 3 La. 688; *De Ben v. Gerard*, 4 La. 30; *Chicago v. Rumpff*, 45 Ill. 90; *Mayor v. Thorn*, 7 Paige [N. Y.] 263; *Paxton v. Sweet*, 1 Green [N. J. Law] 200.

VI. Injunction will lie. The defendants were threatening to arrest each and every employe of plaintiff, and thereby to compel plaintiff to obey such ordinance, or submit to a stoppage of its business until the legality of the ordinance could be finally tested in the courts, and thereby greatly discommode the traveling public, and prevent plaintiff from the discharge of the duties incumbent on it as a common carrier. The rule is, that on a proper showing the courts will prevent the enforcement of a void ordinance. High on Injunctions, p. 465, sec. 787; *Railroad v. Springfield*, 85 Mo. 674, and cases cited. The execution of a void judgment by a justice will be restrained by injunction. *Bornscheim v. Finck*, 13 Mo. App. 120; *Ins. Co. v. Cummins*, 90 Mo. 267. One of the offices of an injunction is to prevent a multiplicity of suits where the whole question can be determined by one and the same proceeding. *Damschroeder v. Thias*, 51 Mo. 100; *Bank v. Kercheval*, 65 Mo. 682. Where an ordinance is void any person whose interests are affected thereby may enjoin enforcement of the same. *Baltimore v. Scharf*, 10 Am. and Eng. R. R. Cases, 259; *Whitney v. Mayor*, 28 Barb. [N. Y.] 238; *Mayor v. Radecke*, 49 Md. 231.

R. W. QUARLES and W. A. ALDERSON, for the respondents.

I. The appeal in this case, having been taken from

an order of the court, refusing the temporary writ of injunction, is premature and should be dismissed. *Marble v. Bonhotel*, 35 Ill. 240 ; *Hilbish v. Catherman*, 60 Pa. St. 444 ; *Glass v. Clark*, 41 Ga. 544 ; *Rarmond v. Conger*, 51 Va. 536 ; *Tanner v. Irwin*, 1 Mo. 65 ; *Johnson v. Board of Education*, 65 Mo. 47 ; *Wilthaus v. Bank*, 18 Mo. App. 181 ; *Harrison v. Rush*, 15 Mo. 175.

II. The appellant contends that it has the right to resort to the writ of injunction to prevent a municipality enforcing a *quasi*-criminal or penal ordinance, and this without the least show or contention that the ordinance has been declared invalid in the proper judicial proceeding. The appellant's petition is an extraordinary invocation of the use of the writ of injunction, and is without merit; the writ should not be prostituted to the purpose for which it is asked. *Sparkhawk v. Railroad*, 54 Pa. St. 401 ; *Gault v. Wallis*, 53 Ga. 675 ; *Joseph v. Burk*, 46 Ind. 59 ; *Moses v. Mobile*, 52 Ala. 198 ; *Kerr v. Preston*, 6 Ch. Div. 463 ; *Davis v. American Society*, 75 N. Y. 362 ; *Halderstaffe v. Saunders*, 6 Mod. 16 ; *West v. Mayor*, 10 Paige, 539 ; *Cohen v. Commissioners*, 77 N. C. 2 ; *Barnett v. Municipality*, 4 La. An. 620 ; *Levy v. Shreveport*, 27 La. An. 620 ; *Gartside v. East St. Louis*, 43 Ill. 47 ; *Davis v. Society*, 6 Daly, 81 ; *Funcke v. Commissioners*, 66 How. Pr. 318 ; s. c., 15 U. S. Dig. [N. S.] 397-7 ; *Patterson v. Seaton*, 64 Ia. 115 ; *Snider v. Marks*, 10 U. S. 189 ; *Oil Co. v. Little Rock*, 39 Ark. 412 ; *Garrison v. Atlanta*, 68 Ga. 64 ; *Phillips v. Stone Mountain*, 61 Ga. 386 ; *Chicago v. Wright*, 64 Ill. 318 ; *Rogers v. Cincinnati*, 5 McLean, 337.

III. The ordinance is purely a police regulation, and in its enactment the city exercised its power of police. Police power cannot be bargained or bartered away, nor can its exercise be hindered or embarrassed. The ordinance is valid. *Railroad v. Orange*, 41 N. J. L. 127 ; *Allerton v. Chicago*, 6 Fed. Rep. 555 ; *Railroad v. Philadelphia*, 101 U. S. 528 ; *Water Works v. Kansas*

*City*, 28 Fed. Rep. 921; *Railroad v. Philadelphia*, 5 Pa. St. 119; *Stone v. Mississippi*, 101 U. S. 814;. *Merz v. Railroad*, 88 Mo. 672; s. c., 14 Mo. App. 459; *Butchers Co. v. Crescent City Co.*, 111 U. S. 746; *Thorpe v. Railroad*, 27 Vt. 140; *Railroad v. McClellan*, 27 Ill. 140; *Railroad v. Railroad*, 30 Ohio St. 604; *Railroad v. Springfield*, 85 Mo. 674; *Kincaid's Appeal*, 66 Pa. St. 411; *Railroad v. Jacksonville*, 67 Ill. 11, 37; *State to use v. Railroad*, 83 Mo. 144; *Commissioners v. Portland*, 63 Me. 269; *State v. Railroad*, 17 Neb. 647; 2 Redfield on Railroads, 577, 578; Cooley's Const. Lim. 251, 339, 342, 343, 710, 715, 717; Rorer on Railroads, 557, 558; Tiedeman's Lim. Pol. Pow. 576, 580, 582, 602; *Water Works Co. v. City of Kansas*, 20 Mo. App. 237; *Metropolitan Board v. Barrie*, 34 N. Y. 657; *City of Kansas v. Corrigan*, 18 Mo. App. 206.

PHILIPS, P. J.—This is a proceeding by injunction to restrain the defendants from enforcing against the plaintiff a certain ordinance of the defendant city. The substance of the petition is, that the City of Kansas is a municipal corporation under the laws of the state, and the defendant, Henry C. Kumpf, is the mayor, and the defendant, Thomas M. Speers, is the chief of police, of said city; and that the plaintiff is a railroad corporation, under the laws of the state, for the purpose of constructing and operating endless cable-line railways in said city; and that it has constructed and is operating such lines over and along certain named streets in said city; that its said road intersects and crosses certain streets in said city; that plaintiff's cars are run over said road every few minutes in the day, and is a great public convenience, carrying more than ten thousand people daily. The petition then sets out the ordinances of said city under which it built and is operating said road. It then alleges that, while, under the grant from the city, it was made subject to a certain named ordinance respecting the existing police regulations of the city, which did not contain the requirement herein-

.after named, and that the grant expressly stipulated that, while it was subject to the right of amendment, etc., .by the city, it provided that any change in the same, to .be binding on the plaintiff, should affect all street railways in said city in the same manner. It is then .alleged that, on the second day of October, 1886, after .the grants aforesaid, and the construction of the plain- .tiff's road, the common council of said city passed an ·ordinance requiring the plaintiff to keep flagmen or watchmen at certain points along the line of its road, where it crosses certain streets, and at certain curves, ·during certain hours of the day and night; which said ordinance imposes certain heavy penalties, in the way of fines, on its officers and servants for any and every car .it permits to run over said points without such watch- man; that its said road is crossed by various other street railway car lines at said street crossings, and that other roads have on their lines like curves, and there is no provision of like character requiring said other railroads to keep or maintain such watchman at said points, or ·like points on their lines, or to share with plaintiff the ·costs and expense of maintaining such guards where their respective lines intersect; "that plaintiff's said railroad is about three miles in length, and that the combined length of the other street railroads in said city . is not less than twenty miles, and many of the curves on said railroads are in populous parts of said city, while the curves on plaintiff's said railroad, where said watchmen or flagmen are required to be kept, are not in populous portions of said city; that, by reason of said ·ordinance having by its terms no application to any street railroad except that of plaintiff, the same is unjust, inoperative, and void as to this plaintiff; but, nevertheless, the defendants assert and claim that said ·ordinance is valid and binding on the plaintiff, and threaten to arrest its officers, agents, and servants unless they comply with the terms thereof, and to interfere with and stop the running of plaintiff's cars over its said line of railroad; that if defendants are not

restrained by the order of this court they will carry said threat into execution, subject the public to great inconvenience by arresting the servants of plaintiff engaged in operating said railroad, and thereby stopping the running of plaintiff's said cars, and doing to plaintiff a great and irreparable damage and injury by reason of the interruption of its business and depriving it of the profits arising therefrom, and subjecting it to great expense in the stoppage of its machinery ; that the damage, caused by the stoppage of plaintiff's road cannot be certainly determined, as the profits arising from its operation depend upon the volume of public travel thereon, which is variable."

The petition then concludes with the usual averment that it has no adequate remedy at law, and with the appropriate prayer for injunction.

On the hearing of this application, the court refused to grant the relief, and dismissed the petition. Plaintiff has appealed.

I.   It is first objected by respondents that the appeal is premature.   This is based on the assumption that the appeal was taken from the action of the trial court in merely refusing to grant a temporary injunction, leaving the cause of action still pending in the court. The rule of law seems to be well established in this state that an appeal does not lie from the mere refusal to grant a temporary writ of injunction, without more, or from the action of the trial court in merely dissolving the temporary injunction.   *Tanner v. Irwin*, 1 Mo. 65 ; *Johnson v. Board of Education*, 65 Mo. 47 ; *Harrison v. Rush*, 15 Mo. 175.   But such is not this case.   The record shows that, on the twenty-second day of November, 1886, the petition was presented to the court in term, whereupon the court granted an *ad-interim* order, staying the defendants until the twenty-seventh day of that month, when they were cited to appear and show cause ; that, on the fourteenth day of December, following, the following entry of record appears : "The defendants having entered their appearance herein, and having

waived the issuing of a restraining order, and the arguments of counsel having been fully heard, and the motion herein fully considered by the court, the petition for a temporary writ of injunction is denied, and the petition herein is dismissed." From this it is manifest that the court not only refused the temporary writ, but also *dismissed the petition.* So there was no longer any cause of action left pending in that court. It was, so far as the court could act, a final disposition of the case, which entitled the plaintiff to appeal. *Witthaus v. Bank*, 18 Mo. App. 183.

II. The next question to be answered is, is the remedy by injunction permissible on the facts disclosed by the bill? The threatened injury to plaintiff's property and business arises from the fact that the municipal authorities of Kansas City are about to enforce against plaintiff the provisions of the ordinance mentioned in the petition, exacting of plaintiff the maintenance of certain watchmen, or guards, at designated street-crossings and curves in the road. The penalty prescribed for a disregard of this ordinance by plaintiff is the liability to arrest of its officers, agents, and servants, and, on conviction, the imposition of a certain maximum fine, with conditional imprisonment in default of payment thereof. It is now the recognized doctrine that such municipalities, through their councils, are miniature general assemblies, and their ordinances have the force and effect of laws passed by the state legislature. So it is said : " The municipal ordinances and the state statutes are from a common source of authority ; one class presents it in a delegated, and the other in a direct, form ; but it is the power of the state which speaks in both." *St. Louis v. Foster,* 52 Mo. 513 ; *State v. DeBar*, 58 Mo. 395. It is a well-established doctrine that courts of equity never interfere to stay proceedings of a criminal character; as such courts deal only with civil and property rights. 1 High on Injunctions, sec. 68 ; *Moses v. Mayor*, 52 Ala. 209 ; *Oil Co. v. Little Rock*, 39 Ark. 412 ; *Kerr v. Preston*, 6 Ch. D. 463 ; 2 Danl. Ch. Pr. 1620 ; Hill Inj., p. 19, sec. 30,

p. 223, sec. 7. This principle was so strongly rooted in the minds of the old common-law judges that Holt, C. J., declared that he would disregard an order of a court of equity to stay a criminal proceeding in his court. *Holderstaffe v. Sanders*, 6 Mod. 16; *Attorney General v. Cleaver*, 18 Vesey, 219; *Lord Montague v. Dudman*, 2 Vesey, 396.

It is one of the recognized rules that a court of equity, having acquired jurisdiction of the parties and the subject-matter, will retain the cause until complete justice and final adjudication of the rights of the parties are determined. If action, for example, had been actually taken, by the city, and warrant of arrest had been issued by the city recorder, for the enforcement of this ordinance, and this bill had been filed to stay the proceeding, and on the hearing the chancellor, or the circuit court sitting as a court of equity, should be of opinion that the ordinance in question was valid, and that the proceeding was proper, no one would contend that, on the refusal to grant an injunction, or on the dissolution of a temporary injunction, the circuit court could proceed to judgment against the offending party. It could only remit him to trial before the city recorder, whose jurisdiction is original, with the right of appeal, not even to the circuit court, but only to the criminal court of Jackson county; and this court could only acquire jurisdiction of the case by appeal from the criminal court. And the rule that a court of equity will not interfere to stay a criminal prosecution is applied to proceedings under city ordinances enforceable, as this is, by fine, with consequent liability to imprisonment. Authorities *supra; Rogers v. Cincinnati*, 5 McLean, 337.

We have not overlooked the suggestion of plaintiff, in its petition and brief, that, as its officers and servants are liable, under the ordinance, to an arrest for every car run over its track without a compliance with the ordinance, thus either multiplying, to an enormous extent, litigation, or subjecting the company to a suspension of

its entire business until the validity of the ordinance
could be tested ; and that it would be extremely difficult
to estimate the damage done to plaintiff's business, even
if there were any responsible agent for such damage, a
strong appeal to equitable interference and protection is
made.    And I am free to admit that I can conceive of a
state of affairs growing out of an attempt to enforce a
vicious and invalid ordinance against such a corporation,
which would be so destructive of the property rights of
the corporation, under its franchise, as ought to invoke
the extraordinary powers of a court of equity for the
preservation of its property and its corporate life.    But
extreme cases are the quicksands of the courts ; and too
great caution cannot prevail to avoid a precedent that
may prove more hurtful in the end than the evil it was
designed to avert in the given case.    This court, exercis-
ing as it does appellate jurisdiction over like causes
originating in the recorder's court of this city, may well
recognize its own knowledge of the fact that the admin-
istration of justice, through appeal from that to the
higher courts, is not so tardy as to probably entail any
great loss to plaintiff by submitting this controversy to
that jurisdiction.    At all events, we do not perceive such
emergency in the situation as would justify us in break-
ing through the better-established doctrine of non-inter-
ference as a court of equity with the administration of a
penal statute in the courts of criminal jurisdiction.

The only authorities which I have been able to find
countenancing the remedy by injunction in such cases
are *Mayor v. Radecke*, 49 Md. 218, and *Wood v. Brook-
lyn*, 14 Barb. 425.    While, perhaps, it would not be fair
to say that the latter case has been overruled, yet its
authority is much impaired by the language of the court
of appeals in *Davis v. American Society*, 75 N. Y. 369.
The Maryland case, however, goes the full length of sus-
taining the jurisdiction claimed by appellant for a court
of equity in this case.    With no spirit of criticism, but
with the highest respect for the dignity and learning of
that tribunal, we cannot refrain from the observation

that this case is not an inapt illustration of how the broad language of the judge, employed in reference to a given state of facts and law under consideration, may be misused in its application to a different state of facts, involving a different principle in practice.    The language of the court is, that any party whose interests are to be injuriously affected by the enforcement of a void ordinance, may, and properly ought to, go into a court of equity and have the execution of the ordinance stayed by injunction, adding, that this course of proceeding has been sanctioned and approved by this court in numerous cases.    The adjudications cited were cases touching the validity of ordinances not of a penal or criminal character.    They were cases involving the validity of ordinances for the paving of streets at the expense of the property-owners, or attempting to appropriate private land to public use, or to issue bonds without a vote of the taxpayers, in contravention of the state constitution.    And the case of *Page v. Mayor*, 34 Md. 558, from which the learned judge, in *Mayor v. Radecke*, quotes the language above given, arose out of a contest over the validity of an ordinance providing for the opening of streets in the city of Baltimore, and the appeal was taken by a dissatisfied property-owner from the assessment made on his property taken.    As to such cases, purely civil in their character, there is little question now but that it is within the province of a court of equity, by injunction, to protect the property-owner against such unauthorized invasions.    Such ordinances are not penal.    Such is the case of *Springfield Ry. Co. v. City of Springfield*, 85 Mo. 674.    After the defendant city had given, by grant, the right to the plaintiff railroad to construct its track over the public square, and the railroad company had so constructed its road, the city threatened, and was about, to fence up the square, with an iron fence, which would thereby disconnect a part of the road, destroying its usefulness, etc.    The court held that the remedy of injunction would lie, as equity " will interfere to protect and secure the enjoy-

ment of a franchise secured by statute, because it affords the only plain and adequate remedy. And so equity will protect rights of a like character acquired under municipal ordinances."

The validity of the ordinance in question can be fully tested in a trial, under an arrest, in the law courts. One judgment therein should end the litigation. There is high authority for saying that in the contingency, suggested by plaintiff's counsel, of as many arrests and prosecutions as there should be separate trips of the plaintiff's cars, a court of equity might, after one conviction, stay temporarily the proceedings in the others until a final determination of the first. *Railroad v. Mayor*, 54 N. Y. 159. The court distinguish such a case from that of *West v. Mayor*, 10 Paige, 539. No such contingency has as yet arisen in the condition of this complaint; and until it does we are not called upon to affirm or deny the authority of the above case. It is of such dignity, however, as to suggest to the city the propriety of avoiding, in any contest involving the validity of the ordinance in question, the unnecessary multiplication of actions until the right to proceed be determined in one action.

It results that the judgment of the circuit court is affirmed. All concur.