## M. SCHANDLER BOTTLING Co. *v.* WELCH *et al.*

### *(Circuit Court, D. Kansas. July 18, 1890.)*

INTOXICATING LIQUORS—SALES IN ORIGINAL PACKAGES—CRIMINAL PROSECUTION—INJUNCTION.

Though a court of equity has no jurisdiction to enjoin purely criminal proceedings, injunction will lie against proceedings by a prosecuting attorney to prevent the agents of a non-resident importer from selling intoxicating liquors in the original packages in which they were imported, under a state law which, in so far as it prohibits such sales, is in violation of the interstate commerce clause of the federal constitution, since such proceedings are an interference with complainant's property rights under the constitution, for which, as provided by Rev. St. U. S. § 1979, an action at law or suit in equity may be maintained.

In Equity. Bill for injunction.

The complainant is a corporation of the state of Missouri. The respondents are residents of the state of Kansas. The respondent Welch is the acting county attorney of Shawnee county, in Kansas, and the respondent Wilkerson is the acting sheriff of said county.

The bill alleges that complainant is engaged in the business of a wholesale and retail liquor dealer at the City of Kansas, in Missouri; that it owns and has in possession a large amount of whiskies, wines, and beer, and other articles of merchandise, in said last-named city, and sells the same to various customers in other states as merchantable commodities; that on or about the month of May, 1890, it established an agency at the city of Topeka, in Kansas, for the sale of such articles, and engaged and employed as agents, at said place, Carl Jockneck and J. R. Deisher, to receive and sell for it at said point such merchandise as it might ship to them for said purpose; that said agents were and are also citizens resident of the state of Missouri; that in establishing such agency the complainant invested a large sum of money at said city of Topeka, and shipped to said agents large quantities of such liquors, wines, beer, etc., amounting to several thousand dollars; that said articles were shipped by express and otherwise, at great expense, securely packed and sealed, in packages consisting of several hundred in number, each of which packages was securely boxed up, sealed, and numbered, in distinct, separate

packages, and shipped from Kansas City, Mo., the business point and house of complainant, consigned to said agents, to be received by them, and sold for and on behalf of complainant, in the original packages in which they were so shipped, and not otherwise; and that said goods were being so sold by said agents in the original packages, and not otherwise, as they had a right to do under the constitution of the United States.

The bill then charges that said respondents, after the said shipment of said goods, and the beginning of said agents to so make sales of the same, conspired and confederated together to unlawfully oppress, impede, and obstruct the complainant and said agents in conducting said business, and to drive them out of the county and state aforesaid, and prevent them from conducting said business therein; and, in pursuance of said conspiracy, the respondents, under the garb and color of their said offices, were to cause the arrest, imprisonment, and prosecution of said agents, and, as often as they might be released from such arrests, they would cause their rearrest and imprisonment, and by exacting, or causing to be exacted, exorbitant and unreasonable bail, compel their confinement in jail, and, as often as discharged therefrom by the writ of *habeas corpus,* to prefer in different form apparently new, but, in effect, the same, charges against them, for so conducting said business seemingly in violation of the state law, although said respondents well knew their said business was lawful under the laws and constitution of the United States. That accordingly said Welch caused certain criminal proceedings to be instituted against them in the district court of said Shawnee county, under which they were arrested by said Wilkerson, and a bail-bond of $3,000 demanded and required of them, which bond was wholly unwarranted by the character of the alleged offense, oppressive, and unconstitutional. That at the same time, and as a part of said conspiracy and criminal proceeding, they caused to be filed and instituted against said agents an injunction suit to prevent them from selling said articles as they had a right to do under the constitution of the United States. That said order of injunction was served on said agents at the same time they were so placed under arrest in said criminal proceedings, which said order was issued without any previous notice to said agents, or opportunity to be heard thereon. Thereupon, said agents applied to the United States circuit court for their discharge from said arrest under the writ of *habeas corpus;* and, after full hearing and investigation of the law and facts, said United States court did discharge them under such writs. *Ante,* 545. That said officers, under the garb and color of their said offices, propose and threaten to continue to so harass and vex said agents with like trumped-up charges and prosecutions for continuing to so sell such goods in the original packages in which they were imported as aforesaid. The object of said prosecutions and persecutions is to prevent said agents and complainant from pursuing said lawful business in said county, and to break up its trade, and destroy its property. That said charges and prosecutions are to be made before the said district court of Shawnee county, on the ground and under the pretext that said acts of said agents are in violation of what is known as the "Prohibitory

Liquor Law of the State of Kansas," and is in fact designed to prevent the importation of such goods into the state from other states, and their sale in the original packages in which they are shipped.

The prayer of the bill is for a provisional injunction temporarily restraining and prohibiting respondents, their deputies, assistants, etc., from instituting or prosecuting civil or criminal actions against said agents, and preventing them from receiving and selling such goods so shipped to them in the original packages to such persons as may apply for the same, and from molesting them in their said business so conducted, and for a perpetual injunction, if, upon a full hearing, the facts shall so appear as alleged, and for all proper relief.

At the preliminary hearing of this application the respondents appeared, and demurred generally to the bill. The cause was heard by Judge PHILIPS, of the western district of Missouri, under order of the circuit judge, in conjunction with Judge FOSTER.

*E. Hagan,* for complainant.

*L. B. Kellogg,* Atty. Gen., for defendants.

PHILIPS, J., (*after stating the facts as above.*) The objection made to this proceeding, that it is practically a suit against the state, has been considered by us in the case of *Tuchman* v. *Welch, ante,* 548, in the opinion just filed. See, also, *Hagood* v. *Southern,* 117 U. S. 70, 6 Sup. Ct. Rep. 608. The remaining question, not disposed of in that discussion, is whether or not this suit is obnoxious to the objection that a court of equity never extends its jurisdiction to the enjoining of criminal proceedings. This is, unquestionably, a well-settled general rule of equity jurisprudence. *Railway Co.* v. *Kansas City,* 29 Mo. App. 89, and *loc. cit.* This question underwent extended discussion in *Re Sawyer,* 124 U. S. 200, 8 Sup. Ct. Rep. 482. Mr. Justice GRAY, who delivered the majority opinion, said, *inter alia:*

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors. * * * To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, * * * is to invade the domain of the courts of common law."

Without stopping here to consider whether this general rule is limited to criminal proceedings already begun in the court of criminal jurisdiction, it is sufficient to the matter in hand to say, as indicated in the quotation above made, that the rule has its exceptions. One of these is where a threatened criminal proceeding is hostile, vexatious, and unwarranted, and involves the wanton destruction of or injury to property interests of the accused; and especially so under circumstances where, if permitted to proceed, the party injured would have no adequate remedy at law for restitution. Mr. Justice GRAY recognizes this. He quotes from *Sheridan* v. *Colvin,* 78 Ill. 237:

"It is elementary law that the subject-matter of the jurisdiction of a court of chancery is civil property. The court is conversant only with questions of

property, and the maintenance of civil rights. Injury to property whether actual or prospective, is the foundation on which the jurisdiction rests. The court has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right to property."

Again he says:

"No question of property is suggested in the allegation of matters of fact in the bill, or would be involved in any decree that the court could make thereon."

So Mr. Justice FIELD, in his concurring opinion, said:

"In many cases, proceedings criminal in their character, taken by individuals or organized bodies of men, tending, if carried out, to despoil one of his property or other rights, may be enjoined by a court of equity."

In the case of *Emperor of Austria* v. *Day*, 3 De Gex, F. & J. 217, Lord Justice TURNER observed:

"I agree that the jurisdiction of this court in a case of this nature rests upon injury to property, actual or prospective, and that this court has no jurisdiction to prevent the commission of acts merely criminal or merely illegal, and which do not affect any right of property; but I think there are here rights of property quite sufficient to found jurisdiction in this court. I do not agree to the proposition that there is no remedy in this court if there be no remedy at law, and still less do I agree to the proposition that this court is bound to send a matter of this description to be tried at law. The highest authority upon the jurisdiction of this court, in enumerating the cases to which the jurisdiction extends, mentions cases of this class, where the principles of law by which the ordinary courts are guided give no right, but, upon the principles of universal justice, the judicial power is necessary to prevent a wrong, and the positive law is silent."

In *Spinning Co.* v. *Riley*, L. R. 6 Eq. 558, the vice-chancellor said:

"The jurisdiction of this court is to protect property; and it will interfere by injunction to stay any proceedings, whether connected with crime or not, which go to the immediate, or tend to the ultimate, destruction of property, or to make it less valuable for use or occupation."

In *Lottery Co.* v. *Fitzpatrick*, 3 Woods, 222, the court was called upon, in the exercise of its equity jurisdiction, to meet and counteract the attempt of the state, through unfriendly and hostile legislation, to drive the obnoxious concern and its business from the state, through penal enactments and criminal prosecutions. The court says:

"Nor is there anything in the fact that the defendant is an officer, and supposes he is performing an official duty, which would constitute a reason for withholding the exercise of this jurisdiction. The jurisdiction is conservatory, and is employed where a wrong is attempted under color of law, and with an appearance of right, to inflict permanent and incurable mischief. The remedies of law are not generally adequate to defend persons from violence and lawlessness. The unoffending citizen is entitled to be protected by the state through its punitive laws. But when the state itself errs, and its legislature visits by a law constantly recurring penalties upon all the officers and agents of a corporation, it gives rise to a question of the rightfulness of the law, viewed in its operation upon franchises,—upon property; for, since a corporation is an artificial being, and can only act through its representatives, any law which forbids, under penal sanction, every conceivable corporate act of officers and agents, must assail the value and existence of its privileges, and, if the law

be unauthorized, its operation may be restrained, and property which is by the constitution exempted from this power may be protected by the proper process of the courts."

Again he says:

"The officers of every state of the United States, whether executive or judicial, owe to the constitution of the United States a fealty and homage and obedience surpassing that which they owe to their constituents of the state. The people of the United States, composed of all the peoples of the separate states, have adopted the constitution, and have ordained that the terms of that instrument, and the laws and treaties made pursuant to it, shall have obedience, anything in the constitution and laws of any state to the contrary notwithstanding." Citing *Gibbons* v. *Ogden,* 9 Wheat. 1; *Dodge* v. *Woolsey,* 18 How. 331.

In the latter case, the circuit court of the United States for the district of Ohio having granted an injunction upon the officers of the state from enforcing the state enactments, the supreme court said:

"The jurisdiction of chancery extends to inquire into and enjoin, as the case may require to be done, any proceedings by individuals, in whatever character they may profess to act, if the subject of complaint is an imputed violation of a corporate franchise, or a denial of a right growing out of it, for which there is not an adequate remedy at law."

So in *Osborn* v. *Bank,* 9 Wheat. 738, the court say:

"The counsel for appellants are too intelligent, and have too much self-respect, to pretend that a void act can afford any protection to officers to execute it. The circuit court of the United States has jurisdiction of a bill brought by the United States for the purpose of protecting the bank in the exercise of its franchises which are threatened to be invaded under the unconstitutional laws of the state."

And in that case the order of restraint went against the officers threatening the injury to the franchise.

It is scarcely needful to be observed that the courts would not any the less extend their protecting arm over the property rights of the individual citizen than over those of a corporation.

In *Live-Stock, etc., Ass'n* v. *Crescent City, etc.,* Co., 1 Abb. (U. S.) 388-406, Mr. Justice BRADLEY, while, as shown in the opinion in *Tuchman* v. *Welch, supra,* declining to restrain proceedings already instituted in the state court, under his conception of the civil rights bill as it then existed, not obviating the applicability of section 720, Rev. St. U. S., proceeded to enjoin and restrain the defendants "from commencing or prosecuting any other suits upon their act of incorporation than such as are now pending against the said complainants, or either of them, from doing or performing any act expressed in the declarative clause of this decree, or from suing for any fine or penalty imposed in said act, or from doing or performing any of the acts aforesaid, and from interfering with them in the prosecution of their lawful occupations as live-stock dealers or butchers, or as vendors of animal food or animals."

The declared object and purpose of the respondents is to obstruct and prevent the right of complainant and its agents to pursue a lawful avocation and business in commerce between the states. In short, in intent

and in effect, to destroy complainant's said business, and expel his property, imported into the state for mercantile purposes, from the state. Certainly, such condition of affairs call into activity the equity powers of the court to protect the property rights of the complainant, secured to him by the constitution of the United States. Such an emergency, we think, is provided for by section 1979, Rev. St. U. S., which declares that—

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Nothing, of course, here said or enjoined, is to be construed as extending to any prosecution to which the complainant or its agents may be lawfully subject for selling such articles otherwise than as importers, in the original packages in which they may be imported, within the protecting terms of the federal constitution, as interpreted by the supreme court of the United States. With this limitation, the temporary writ of injunction should be granted.

FOSTER, J., concurs.