### DAVIS & FARNUM MFG. CO. v. CITY OF LOS ANGELES.

(Circuit Court, S. D. California, S. D.    April 3, 1902.)

#### No. 1,015.

EQUITY—JURISDICTION—ENJOINING CRIMINAL PROSECUTIONS.

A court of equity is without jurisdiction to enjoin criminal prosecutions under a statute or ordinance alleged to be unconstitutional and void, even though it is also alleged that it is the purpose of such prosecutions to injure complainant in his property rights, and that such will be their effect.[1]

In Equity. On motion for preliminary injunction.

Lynn Helm and Lee, Scott, Bailey & Chase, for complainant.
W. B. Mathews, Le Comte Davis, and W. R. Bacon, for defendant.

WELLBORN, District Judge. Complainant at the commencement of this suit was erecting within the city of Los Angeles, for and under contract with another party, a water holder and gas tank, and filed its bill solely to enjoin threatened criminal prosecutions, under an

[1] See Injunction, vol. 27, Cent. Dig. §§ 178, 179.
Restraining criminal prosecution, see note to Arbuckle v. Blackburn, 51 C. C. A. ——.

ordinance of said city alleged to be invalid, against its employés for working on said structures, the purpose and effect of which prosecutions, the bill alleges, are to compel complainant to abandon said work, and thereby destroy or impair its vested property rights. The questions now presented for consideration relate to the equitable jurisdiction of this court, and the validity of said ordinance. These questions will be taken up in the order of their statement, because, if the jurisdiction does not exist, further inquiry concerning the ordinance is unnecessary.

The supreme court of the United States has said:

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes and misdemeanors, or over the appointment or removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government. * * * The modern decisions in England by eminent equity judges concur in holding that a court of chancery has no power to restrain criminal proceedings, unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there. Attorney General v. Cleaver, 18 Ves. 211, 220; Turner v. Turner, 15 Jur. 218; Saull v. Browne, L. R. 10 Ch. 64; Kerr v. Preston Corp., 6 Ch. Div. 463. Mr. Justice Story, in his Commentaries on Equity Jurisprudence, affirms the same doctrine. Story, Eq. Jur. § 893. And in the American .courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike whether the prosecutions or arrests sought to be restrained arose under statutes of the state or under municipal ordinances. West v. Mayor, etc., 10 Paige, 539; Davis v. Society, 75 N. Y. 362; Tyler v. Hamersley, 44 Conn. 419, 422, 26 Am. Rep. 471; Stuart v. Board, 83 Ill. 341, 25 Am. Rep. 397; Devron v. First Municipality, 4 La. Ann. 11; Levy v. City of Shreveport, 27 La. Ann. 620; Moses v. Mayor, etc., 52 Ala. 198; Gault v. Wallis, 53 Ga. 675; Phillips v. City of Stone Mountain, 61 Ga. 386; Cohen v. Goldsboro Com'rs, 77 N. C. 2; Waters-Pierce Oil Co. v. City of Little Rock, 39 Ark. 412; Spink v. Francis (C. C.) 19 Fed. 670; Id. (C. C.) 20 Fed. 567; Suess v. Noble (C. C.) 31 Fed. 855." Ex parte Sawyer, 8 Sup. Ct. 482, 124 U. S. 200, 31 L. Ed. 402.

To the same effect are the following cases: Suess v. Noble (C. C.) 31 Fed. 855; Hemsley v. Myers, and nine other cases, including M. Schandler Bottling Co. v. Welch (C. C.) 45 Fed. 283; Brewing Co. v. McGillivray (C. C.) 104 Fed. 272; Crighto v. Dahmer (Miss.) 13 South. 237, 21 L. R. A. 84, 35 Am. St. Rep. 666; City of Denver v. Beede (Colo. Sup.) 54 Pac. 624; Wardens of St. Peters Episcopal Church v. Town of Washington (N. C.) 13 S. E. 700; and City of Moultrie v. Patterson (Ga.) 34 S. E. 600.

The clear and positive declaration of law by the highest judicial tribunal of the land in Ex parte Sawyer, supra, is, without the other citations, determinative of the case at bar, since the prosecutions here sought to be enjoined are outside the exception to, and fully within the general rule enunciated in, the Sawyer Case.

Complainant, however, contends that said rule is further restricted to the extent indicated by the following excerpts:

"Writers on equity jurisdiction properly say that the court of chancery does not deal with matters of crime, misdemeanors, offenses against prohibitory laws, nor questions of mere morality. But there is this reservation.

that it is only when those matters are not connected with rights of property with respect to which the court has jurisdiction. Circumstances may confer a jurisdiction. Attorney General v. Cleaver, 18 Ves. 211; Macaulay v. Shackell, 1 Bligh (N. R.) 96. In Spinning Co. v. Riley, L. R. 6 Eq. 558, the vice chancellor says: 'The jurisdiction of this court is to protect property, and it will interfere by injunction to stay any proceedings, whether connected with crime or not, which go to the immediate or tend to the ultimate destruction of property, or to make it less valuable for use or occupation.'" Lottery Co. v. Fitzpatrick, 15 Fed. Cas. 984 (No. 8,541).

"Counsel urge that this bill does not show a cause of action cognizable in chancery against Mr. Wiltsie, the district attorney, since its purpose is to restrain him from instituting prosecutions under color of the amendment of 1897. But this complainant is seeking to protect a property right, and it seems to be law that when such prosecutions are threatened, under color of an invalid statute, for the purpose of compelling the relinquishment of a property right, the remedy in chancery is available." Central Trust Co. v. Citizens' St. R. Co. (C. C.) 80 Fed. 225.

"'If the charge be of a criminal nature, or offense against the public, and does not touch the enjoyment of property, then a court of equity should not interpose by injunction.' On the other hand, where it is manifest, as in this case, that a prosecution and arrest is threatened for an alleged violation of city ordinances for the sole purpose of preventing the exercise of civil rights conferred directly by law, injunction is a proper remedy to prevent injury to the party thus menaced. * * *" City of Atlanta v. Gate City Gaslight Co., 71 Ga. 126.

Besides the three cases last named, complainant also cites in support of its contention the following: Reagan v. Trust Co., 154 U. S. 388, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Los Angeles City Water Co. v. City of Los Angeles (C. C.) 103 Fed. 711; M. Schandler Bottling Co. v. Welch (C. C.) 42 Fed. 561; City of Rushville v. Rushville Natural Gas Co. (Ind. Sup.) 28 N. E. 853, 15 L. R. A. 321; Spinning Co. v. Riley, L. R. 6 Eq. 558; City of Austin v. Austin City Cemetery Ass'n (Tex. Sup.) 28 S. W. 528; Mayor, etc., v. Radecke, 49 Md. 217, 33 Am. Rep. 239; Port of Mobile v. Louisville & N. R. Co. (Ala.) 4 South. 106, 15 Am. St. Rep. 342; Wood v. City of Brooklyn, 14 Barb. 425; and Iron Works v. French, 12 Abb. N. C. 466.

While it is not my purpose to examine in detail all of complainant's citations, brief references will be made to a few of them.

The opinion in the Lottery Case, supra, as shown by the above quotation therefrom, rests largely upon a principle of equity, well recognized, but which, it seems to me, was inapplicable. The same is true of City of Atlanta v. Gate City Gaslight Co., supra, where the opinion quotes from Kerr on Injunctions the principle to which I refer, as follows:

"'A court of equity,' says Kerr (Injunctions, 2), 'has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right of property. If a charge be of a criminal nature, or of an offense against the public peace, and does not touch the enjoyment of property, jurisdiction cannot be entertained. * * * But if an act which is also criminal touches also the enjoyment of property, the court has jurisdiction, but its interference is founded solely on the ground of injury to property.'" 71 Ga. 126.

In City of Austin v. Austin City Cemetery Ass'n (Tex. Sup.) 28 S. W. 529, the court discerns and states the inapplicability of the principle as follows:

"Yet it has been held that 'the court will interfere to prevent acts amounting to crime, if they do not stop at crime, but also go to the destruction or

deterioration of the value of property.' Spinning Co. v. Riley, L. R. 6 Eq. 551. This, however, does not assist us materially in the solution of the present question. It would seem clear that if a party could be enjoined from doing an act, not criminal in its nature, which is injurious to the property of another, he could also be enjoined if the act be one made punishable by law as a crime. The punishment of the criminal, when the act committed has injuriously affected the value of the property of another, does not repair the injury. The question under consideration arises upon quite a different case."

The principle of equity above stated, whose misapplication has led to erroneous conclusions, as I conceive, in some of the cases cited by complainant, means simply that the fact that a threatened act, if done, would be a crime, will not prevent a court of equity from enjoining the commission of the act, where it would also be an invasion of complainant's property rights, and the other requisites to equitable relief concur.

The case most frequently cited for this principle is Spinning Co. v. Riley, L. R. 6 Eq. 551, where, at page 558, the court, without reference to its facts, says:

"The jurisdiction of this court is to protect property, and it will interfere by injunction to stay any proceedings, whether connected with crime or not, which go to the immediate, or tend to the ultimate, destruction of property, or to make it less valuable for use or occupation."

This quotation, although so often otherwise assumed, has no reference whatever to criminal prosecutions, or even to civil suits; but the word "proceedings," therein employed, has an entirely different application, as clearly appears from the facts stated in the syllabus of the case, which is as follows:

"The defendants, who were officers of a trades union, gave notice to workmen, by means of placards and advertisements, that they were not to hire themselves to the plaintiffs pending a dispute between the union and the plaintiffs. The bill prayed an injunction to restrain the issuing of the placards and advertisements, alleging that by means thereof the defendants had in fact intimidated and prevented workmen from hiring themselves to the plaintiffs, and that the plaintiffs were thereby prevented from continuing their business, and the value of their property was seriously injured and materially diminished. Held, upon demurrer, that the acts of the defendants, as alleged by the bill, amounted to crime, and that the court would interfere by injunction to restrain such acts, inasmuch as they also tended to the destruction or deterioration of property." L. R. 6 Eq. 551.

As a further abstract statement of the law concretely enunciated in said syllabus, substantially, however, to the same effect as the one above quoted, the court, at page 560, says:

"The truth, I apprehend, is that the court will interfere to prevent acts amounting to a crime, if they do not stop at crime, but also go to the destruction or deterioration of the value of property."

This rule has no connection with, or relation whatever to, the question of the power of a court of equity to enjoin criminal prosecutions, and I am unable to accept as well reasoned any conclusion which results from confounding the two matters.

In Reagan v. Trust Co. neither the opinion of the court nor briefs of counsel discuss or in any way refer to the question last mentioned, and this, doubtless, for the reason that the proceedings there enjoined

were not criminal prosecutions, but civil actions to recover statutory forfeitures and penalties; and moreover in that case there were other grounds for equitable relief.

In Los Angeles City Water Co. v. City of Los Angeles, of the numerous authorities which the opinion cites concerning the remedy by injunction, not one touches the question of equitable cognizance over criminal prosecutions; and the inference is a fair one that it was not presented in argument, or specially considered by the court.   Furthermore, there was jurisdiction in the case to enjoin civil suits for the forfeiture of complainant's property; and it was, no doubt, assumed by all the parties (whether correctly or otherwise need not now be considered) that the court having acquired jurisdiction for one would exercise it for all purposes.

In M. Schandler Bottling Co. v. Welch (C. C.) 42 Fed. 561, on which complainant seems to place much reliance, the opinion by Philips, district judge, was filed July 18, 1890, on the granting of a temporary injunction.   Afterwards, to wit, February 18, 1891, the same case was heard on demurrer before Caldwell, circuit judge, when the demurrer was sustained, the temporary injunction was dissolved, and the bill dismissed for want of equity.   45 Fed. 283.   On the first hearing the court said:

"The remaining question not disposed of in that discussion is whether or not this suit is obnoxious to the objection that a court of equity never extends its jurisdiction to the enjoining of criminal proceedings. This is unquestionably a well-settled rule of equity jurisprudence.   Kansas City Cable Co. v. City of Kansas City, 29 Mo. App. 89, and loc. cit.   This question underwent extended discussion in Ex parte Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402.   Mr. Justice Gray, who delivered the majority opinion, said, inter alia: 'The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors.   *   *   *   To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses,   *   *   *   is to invade the domain of the courts of common law.'   Without stopping to consider whether this general rule is limited to criminal proceedings already begun in the court of criminal jurisdiction, it is sufficient to the matter in hand to say, as indicated in the quotation above made, that the rule has its exceptions.   One of these is where a threatened criminal proceeding is hostile, vexatious, and unwarranted, and involves the wanton destruction of, or injury to, property interests of the accused, and especially so under circumstances where, if permitted to proceed, the party injured would have no adequate remedy at law for restitution.   Mr. Justice Gray recognizes this.   He quotes from Sheridan v. Colvin, 78 Ill. 237: 'It is elementary law that the subject-matter of the jurisdiction of a court of chancery is civil property.   The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests.   The court has no jurisdiction in matters purely criminal or merely immoral, which do not affect any right to property.' Again he says: 'No question of property is suggested in the allegations of matters of fact in the bill, or would be involved in any decree that the court could make thereon.' "   42 Fed. 563.

On the latter hearing the court said:

"The bill seeks to enjoin criminal proceedings.   A court of equity possesses no such power.   This principle is settled by the uniform current of authorities in England for two centuries, and in this country from the

foundation of its jurisprudence. The recent emphatic reaffirmance of the doctrine by the supreme court of the United States renders it unnecessary to do more than repeat the rule in the language of the court."

Then follows the quotation which I have already given from Ex parte Sawyer, supra.

Thus it will be seen that the latter decision, although not so in terms, is substantially a reversal of the former one. It will also be noted that the opinion on the first hearing, when the temporary injunction was granted, seeks to draw support from Ex parte Sawyer, by quoting certain expressions of Mr. Justice Gray with reference to property rights and civil rights. Obviously, however, these expressions were used by Mr. Justice Gray not to suggest a further exception, but merely to show that the facts of the case did not bring it within the exception embodied in his previous statement of the general doctrine, which I have already quoted, namely (the italics being mine):

"The modern decisions in England by eminent equity judges concur in holding that a court of chancery has no power to restrain criminal proceedings, *unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there.*"

This unambiguous and definite statement of the rule does not admit of any exception other than the one which it expressly allows. Besides, a careful examination of at least one of the authorities cited (Suess v. Noble [C. C.] 31 Fed. 855) shows that no other exception could have been in the mind of the court. The following is the statement of the last case:

"The original cause of State v. Suess was removed from the district court of Jefferson county, Iowa, to this court upon the petition of said Suess, and the same is now pending here. The transfer was made in pursuance of the decision of the circuit judge (Brewer) in the case of State v. Walruff (C. C.) 26 Fed. 178. The purpose of that proceeding was to have the brewery owned and maintained by said Suess declared a nuisance, and, as such, perpetually enjoined and abated. A temporary restraining order, which is still in full force, was issued from this court, the purpose of which was to restrain certain persons, who were carrying on the civil proceedings in the state court, from prosecuting the same to the injury and virtual destruction of the property pending the determination of the question of the jurisdiction of this court over the subject-matter of the said original suit. Lewis Suess now presents his petition to this court against the above-named defendants and others, alleging that they are engaged in commencing and carrying on many criminal prosecutions against him before certain justices of the peace 'for each separate sale of beer at his brewery,' and that they propose 'to place him on trial and find him guilty of selling intoxicating liquors, and to impose upon him heavy fines for said alleged offenses,' etc. He also states, in a supplemental petition, that he was indicted at the January term of the district court of said county for the alleged crime of causing a nuisance by the sale of beer at his brewery, that he was convicted of said alleged offense, and that he has taken an appeal to the supreme court of Iowa upon the federal question as to the constitutionality of the prohibitory law, etc. The prayer of his petition is that this court issue an injunction restraining said defendants from the prosecution of said criminal suits in violation of his rights respecting the subject-matter of the action now pending in this court until the final determination of the same."

Thus it will be seen that the criminal prosecutions sought to be enjoined were one of the means employed to close up the complainant's business, and yet the court held (quoting the syllabus):

"No power exists in any court of equity to interfere by injunction with the prosecution and punishment of crimes and offenses in the courts of common law."

In the quotation which Mr. Justice Gray makes from the Illinois case of Sheridan v. Colvin, the phrase, "The court has no jurisdiction in matters purely criminal or merely immoral which do not affect any right to property," has no reference to criminal prosecutions, but was simply intended to declare that a court of equity would not interfere with acts merely on the ground of their immorality, or because they would, if committed, be crimes. So that the decision in Ex parte Sawyer, supra, whether we look solely to its text or the supporting authorities, is, as I have before stated, conclusive against complainant's contention.

In addition to what has already been said, it may be appropriately observed that municipal and state regulations of saloons, beer halls, theaters, and places of amusement generally, market places, slaughter houses, gas works, powder magazines, laundries, cemeteries, fire limits, streets (particularly obstructions, railway tracks, telegraph poles, pipe lines, etc., therein),—indeed, of all establishments, trades, and occupations subject to the police power of the state,—unavoidably affect property rights, and are usually rendered effective by making their violations punishable offenses. Now, if there were such jurisdiction as that for which complainant contends, every controversy over the validity of an ordinance or statute relating to any of the matters enumerated would furnish an occasion for interference by injunction; and thus would be presented the remarkable situation of courts of equity, state and federal, exercising supervisory power over the administration of a part, not inconsiderable, of the criminal laws of the country.

The jurisdiction asserted by complainant does not, in my opinion, exist, and for that reason the temporary injunction applied for will be refused.