See note to this case in 32 N. W. Rep. 849.— REP.

PEITZ, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 8 — April 12, 1887.*

*Excise laws: Sale of beer by brewer in another town.*

Under sec. 4, ch. 296, Laws of 1885, a brewer cannot establish an agency for the sale of his beer in a town away from his place of business, and sell to such persons as desire to purchase, without obtaining a license from the authorities of the town where the sale is made. *Scanlan v. Childs,* 33 Wis. 663, distinguished.

CASSODAY and ORTON, JJ., dissent.

ERROR to the Circuit Court for *Richland* County.

The case is stated in the opinion.

For the plaintiff in error there was a brief by *Brooks & Dutcher,* and oral argument by *Mr. Brooks.* They cited *Brown v. Maryland,* 12 Wheat. 419; *License Cases,* 5 How.

504–574; *Baker v. Callendar*, 118 Mass. 390; *Richards v. Woodward*, 113 id. 285; *Scanlan v. Childs*, 33 Wis. 663; *St. Paul v. Troyer*, 3 Minn. 291; *Sarbecker v. State*, 65 Wis. 171.

The *Attorney General*, and *L. K. Luse*, Assistant Attorney General, for the defendant in error, argued, among other things, that the legislature might prohibit absolutely both the manufacture and sale of intoxicating liquors. *State v. Downer*, 21 Wis. 277, 279; *Bartemeyer v. Iowa*, 18 Wall. 129; *Beer Co. v. Mass.* 97 U. S. 25; 22 Cent. L. J. 281, note. By the statutes in question the legislature intended to permit manufacturers to sell at wholesale at the place of manufacture, but did not intend to grant to them a privilege of selling to customers for consumption, which was denied to other persons. *State v. Tarver*, 14 Lea, 660; *State v. Joyner*, 81 N. C. 534.

COLE, C. J. The plaintiff in error, the defendant below, was convicted in the circuit court of selling beer without a license. There is no dispute about the facts, which are, in brief, these: The defendant sold a keg of beer direct to the consumer in Richland Centre without having obtained a license from the authorities of the village to sell beer. The beer sold was a keg of four gallons, sealed and stamped, and had the name of the manufacturer branded on the keg. Of course it was in the original package, and the defendant sold it as the agent of the manufacturer, a brewer who resided at Muscoda, a place about fifteen miles distant from Richland Centre. The manufacturer had a regular license from the United States to manufacture beer at Muscoda. He owned a building in Richland Centre, where he sent beer to be stored and sold by his agent, as he says, "to any one who desired to get it." The question therefore presented by the record is, as fairly stated by the assistant attorney general in his brief, Can a brewer establish an

agency for the sale of beer of his own manufacture in a town away from his place of business, and sell to such persons as desire to purchase, without obtaining a license for carrying on such business from the town, city, or village authorities in which the sale is made? We think this question must receive a negative answer. The sale was made in May, 1886, and the provisions of ch. 296, Laws of 1885, apply to it. Sec. 4 of that statute provides, in substance, that if any person shall vend, sell, deal, or traffic in, or, for the purpose of evading any law of this state, give away, any spirituous, malt, ardent, or intoxicating liquors or drinks in any quantity whatever, without first having obtained a license or permit therefor as required by that chapter, he shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished, etc. The language of this enactment is clear, comprehensive, and explicit, and really leaves but little room for construction. The words "if any person shall vend," etc., are broad enough to include the sale made by the defendant, and unless by some subtle or forced interpretation an exception is made, or the words are limited in their plain meaning, they must be held to cover the case.

But the learned counsel for the defendant says the manufacture of beer is a lawful pursuit or business in this state under the regulations prescribed by Congress, and that such lawful business carries with it the implied right to sell the manufactured product in the original package to any one who may desire to purchase it. But we suppose it is a well-settled principle in the jurisprudence of the country that the legislature may entirely prohibit the sale of malt or spirituous liquors within the state by laws prospective in their operation. Judge Cooley says: "Those statutes which regulate or altogether prohibit the sale of intoxicating drinks as a beverage have also been by some persons supposed to conflict with the federal constitution. Such of them, however, as assume to regulate merely, and to prohibit sales by

other persons than those who are licensed by the public authorities, have not suggested any serious question of constitutional power. They are but the ordinary police regulations, such as the state may make in respect to all classes of trade or employment. But those which undertake altogether to prohibit the manufacture and sale of intoxicating drinks as a beverage have been assailed as violating express provisions of the national constitution, and also as subversive of fundamental rights, and therefore not within the grant of legislative power." Const. Lim. 582.

So far as the imported product is concerned, while it remains unbroken in the original package, it is under the protection of the commercial clause of the constitution. But as soon as the package is broken up for use or for retail in the hands of the importer it is under state regulation. There can be no doubt of the power of the legislature to regulate the sale of beer manufactured in this state while in the hands of the manufacturer. The only question is, Has it done so? We have indicated our opinion that the law as it now stands applies to the sale made by the defendant.

But the counsel relies upon the decision of *Scanlan v. Childs*, 33 Wis. 663, where it was held that the manufacturer of ale and beer or other spirituous liquors had the right to sell his product to a dealer, according to the usual custom of such manufactures, without taking out a license. In that case the beer and ale were sold in the place where manufactured, in the original casks as put up, at wholesale, to a retail dealer in the same city who kept a saloon and sold beer at retail, having a city license for that purpose. Chief Justice Dixon gave the opinion in that case, and by a course of reasoning reached the conclusion that the excise law applied " only to the vending of liquors at wholesale or retail by persons who buy for that purpose and carry on that business, and not to sales by manufacturers of articles

made by themselves and put up and disposed of in quantities to dealers according to the usual course of such manufacture and of the trade connected with it." The writer participated in that decision, and assumes his full measure of responsibility for it. Whether he would so construe the excise laws now is an immaterial inquiry. We are all certainly opposed to extending that decision to any case which by its facts is not fully brought within it. The case before us is essentially different from *Scanlan v. Childs*. Here the beer was sold directly to the consumer, at a place distant from where it was manufactured. As the assistant attorney general says, the brewer established an agency for the sale of beer of his own manufacture in a town away from his place of business, and sold to such persons as desired to purchase, without obtaining any license from the authorities of the village where the sale was made. We have no doubt whatever that this was a violation of law. It is true, the excise law upon this precise point is now substantially as it has been since it was first enacted in 1851. In *Scanlan v. Childs* much stress was laid upon the practical construction of the excise law by the officers of the government whose duty it was to execute it. Whatever force there was in that argument in 1873 has been greatly strengthened in view of the fact that the excise law has been revised more than once since the *Scanlan Case* was decided, and no material change has been made in its phraseology on this subject. The legislature must be presumed to have known of the interpretation which had been placed upon the law; that it had been held that it did not apply to a manufacturer selling his products in quantities to a dealer who sold them to other persons, having a license for that purpose. It is certainly a consideration of much weight that the construction placed upon the law in the *Scanlan Case* has been apparently acquiesced in as correct by the legislature, since its language has not been changed. But, as we have said,

we are opposed to the extension of the *Scanlan* decision to any case which does not come fully within its material facts.

The defendant's counsel relied upon the decision in *Sarbecker v. State*, 65 Wis. 171, as having an important bearing upon this case. We cannot perceive that it applies to it; hence it need not be commented upon.

It follows from these views that the conviction of the defendant below must be affirmed.

*By the Court.*— Judgment affirmed.

CASSODAY, J.   I am unable to concur in the reasoning of the chief justice in the opinion filed, as to the scope of the decision in *Scanlan v. Childs*, 33 Wis. 666, 667. That decision was made before the writer hereof became a member of this court; but he recognizes the imperative duty, generally acted upon, that a court of last resort should adhere to its own decisions until convinced that they are clearly wrong, and then squarely overrule them, to the end that the people may know just what the laws are, so as to shape their conduct accordingly or change the law in the only legitimate way,— by legislation.   In the case at bar neither course is to be pursued, if I correctly understand the significance of the opinion of the court in the case mentioned. It is conceded in the opinion filed herein that the statutes under which that decision was made were substantially the same as the statutes under which this is made.   The statutes then, as well as now, after prescribing the conditions upon which licenses might be granted to sell at retail and also at wholesale, provided that "if any person shall vend, sell, deal, or traffic in, or, for the purpose of evading any law of this state, give away, any spirituous, malt, ardent, or intoxicating liquors or drinks in any quantity whatever, without first having obtained a license or permit therefor as required by this chapter, he shall be guilty of a misde-

meanor," etc.   Sec. 5, ch. 35, R. S. 1858; sec. 5, ch. 179, Laws of 1874; sec. 1550, R. S.; sec. 4, ch. 296, Laws of 1885.   In the case cited it was conceded that the manufacturer of the beer and ale had no such license.   Yet the court in that case said, per DIXON, C. J., that "the manufacture of ale or beer, or of any spirituous or intoxicating liquor, has never been prohibited by legislative enactment, nor has a license for such manufacture been required or any duty or impost laid thereon by statute.   The statutes of the state are silent upon the subject, so that the manufacture cannot but be a lawful pursuit or business; and, that being so, it seems to follow that the sale in packages or casks, according to custom among the makers of such articles, is also lawful, unless such sale is regulated or restricted by some express statutory provision.   *The authority to make implies the authority to sell* in the accustomed way, except so far as the legislature has imposed some positive restriction or expressly enacted to the contrary. . . .   The question presented, therefore, is whether this *implied right* has been abridged or taken away by the provisions of the excise law above cited; and it seems clear to our minds it has not. . . .   The statute may contain words, it is true, which by latitude of construction might include such sales by manufacturers; but those are restrained, and such construction forbidden, by the context.   The practical construction, that which has been so long given to the statute by the executive and administrative officers, is, in our judgment, the correct one; and it must accordingly be held that the sales in question by the manufacturer were lawful, notwithstanding he had obtained no license to make them. And this conclusion is confirmed by the consideration, also alluded to by counsel, that no adequate or suitable provision is made by statute for the licensing of such sales by manufacturers,— a circumstance which tends very strongly to show that the obtaining of a license was not intended."

The logic of this decision is very plain. It is, in effect, that the statutes mentioned did not include such manufacturers; that they were at liberty to so manufacture without obtaining any such license; that, having acquired such product by their own manufacture, they had the implied right to sell the same without such license. I am not now arguing whether that decision is sound or unsound, but simply that the case at bar comes within it. If that decision is right, then it seems to me this is necessarily wrong; and, if this decision is right, then that should be squarely overruled. True, in that case the sale of the beer and ale was in the city where it was manufactured; but the statute made no such exception. On the contrary, the same statutes which punish sales without a license here, were then in force there. True, in that case the sale was to a dealer, but there was nothing in the statute then, and there is nothing in the statute now, which makes the right to sell depend upon the business or occupation of the purchaser. It was the *selling* without such license that the law punished, and not merely because the sale was to A. instead of B. The statute no more make the punishment dependent upon the business of the purchaser than it does upon his nationality or complexion. I am not aware of any rule of construction which should make the operation of a statute dependent upon any such extrinsic circumstances. I repeat, the doctrine asserted in *Scanlan v. Childs* should either be applied in its integrity to cases as they arise, or be squarely overruled.

ORTON, J. I concur in the above opinion.