HEMSLEY et al. v. MYERS et al. TUCHMAN v. WELCH, County Attorney, etc. YOUNT v. SAME. M. SCHANDLER BOTTLING CO. v. WELCH, County Attorney, etc., et al. WOLLSTEIN et al. v. WELCH. SAMUELS et al. v. IRISH, County Attorney, etc. BELL et al. v. BLAIR, County Attorney, etc. SCHUTT et al. v. NEVISON, County Attorney, etc. STORY et al. v. NEVISON, County Attorney, etc., et al. MARSHALL et al. v. SAME.

(*Circuit Court, D. Kansas.* February 18, 1891,)

1. INTOXICATING LIQUORS—ORIGINAL PACKAGES—INJUNCTION.

Complainants' bill for injunction, filed in the circuit court of the United States, alleged that they were the agents of liquor dealers living in another state, and, as such, were engaged in selling in Kansas liquors in the original packages in which they were imported by their principals; that by civil and criminal proceedings under the prohibitory law of Kansas defendants were seeking to break up and destroy complainants' business in violation of their rights under the federal constitution; and it prayed that they be restrained from further proceedings in the premises. There was no allegation that defendants were insolvent. *Held,* that complainants have an adequate remedy in an action at law for damages.

2. INJUNCTION—WHEN LIES—CRIMINAL PROCEEDINGS.

The proceedings instituted by defendants being criminal in their nature, a court of equity has no jurisdiction to restrain them by injunction.

3. SAME—STAY OF PROCEEDINGS IN STATE COURT.

Rev. St. U. S. § 720, which provides that "the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state," with one exception mentioned, is not repealed or in any wise affected by section 1979, which declares that every person who, under color of any statute of any state, subjects any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the constitution and laws of the United States, shall be liable to the person injured in an action at law or suit in equity.

In Equity.

On the 15th of July, 1890, Hemsley & Linbecker filed in this court a bill in equity against Myers as sheriff, and Irish as county attorney, of Riley county, and R. B. Spillman as judge of the district court for the twenty-first judicial district of Kansas, which includes Riley county. The bill alleges, in substance, that the complainant Hemsley, as the agent of Glasner & Barzen, (who are not made parties,) liquor dealers doing business at Kansas City, Mo., and citizens and residents of that state, was selling intoxicating liquors, as such agent, at Manhattan, Kan., in the basement of a building rented for his principals for that purpose from his co-complainant as agent for the owner. "That he commenced business in said place on the 21st day of June, 1890, and that up to the 3d day of July, 1890, he had sold in the neighborhood of $300 worth of liquors at wholesale prices, among which were about forty cases of beer, containing twenty-four bottles each, about one hundred packages of whisky, each containing one pint, and sundry packages of beer, each containing four bottles, securely boxed and sealed in pine boxes. That no other kind of packages except those mentioned were received by him, and that no liquors were sold by him except in the original packages as they were shipped to him by Glasner and Barzen, and as received by him." That on the 3d of July, 1890, the defendant Irish, as county attorney, presented to the defendant Spillman, as dis-

trict judge, "a certain petition alleging and setting out the above actions on the part of said Hemsley, and praying that the said place occupied by said Hemsley as a place of business and as the agent of Glasner and Barzen be declared a common nuisance under the provisions of section 13 of what is known as the 'prohibitory law' of the state of Kansas, which said petition was by him, the said F. L. Irish, duly verified; and that, upon the presentation of the said petition to the said R. B. Spillman, a temporary injunction was issued against the complainants, and they were ordered to shut the said place of business, and to abstain and refrain from further sales of intoxicating liquors therein, and to abstain from keeping said place of business open in the manner in which the said complainants had prior to that time kept said place open, and that, in case they failed to do as ordered by said temporary injunction, they would be proceeded against as for contempt of the proper orders and commands of the district court of said county of Riley and state of Kansas." That on motion made for that purpose the court refused to vacate or discharge this injunction. That "the said F. L. Irish, county attorney as aforesaid, threatens and is about to begin and prosecute other injunction suits as well as criminal proceedings against your petitioner, and threatens and is about to take action against your petitioner, and cause him to be committed to the common jail of Riley county, for contempt of the said temporary injunction; and that the said R. B. Spillman also threatens and is about to entertain the proposed proceedings for such temporary injunction and such other criminal proceedings as the said F. L. Irish may bring against said Hemsley, and threatens and is about to issue other orders of injunction against said Hemsley upon such applications, and threatens and is about to commit to the common jail of Riley county the said Hemsley on the alleged cause of contempt of the orders of the said district court, wherein and in fact the said Hemsley has done nothing in violation of the law of the state or of the United States, except that he has a legal right to do, and thereby drive the said Hemsley out of the said original package business, and to cause the said original package business in the said city of Manhattan to be discontinued, and to depreciate the value of the property so as aforesaid imported into the state of Kansas and for sale therein by the said Hemsley as agent of the said Glasner & Barzen, and to so injure and harass the said petitioner and so depreciate the value of the said property of the said importers thereof as to make the said original package business unprofitable, and to cause the same to be discontinued in the said city of Manhattan and state of Kansas." That the statute of Kansas under which the defendants were proceeding was in contravention of the constitution of the United States, and void, and that under the constitution of the United States the plaintiff had the right to carry on the business in which he was engaged. The bill prayed for a perpetual injunction enjoining the defendants "from taking any further proceeding, whether by injunction or by criminal arrest, under the said prohibitory law of the state of Kansas, or otherwise interfering with the sale and keeping for sale in said building of said original packages of intoxicating liquors so as afore-

said imported by Glasner & Barzen to their agent, George Hemsley."
Upon hearing the motion for a temporary injunction the writ was
awarded in these terms:

"GEORGE HEMSLEY AND J. N. LINBOCKER *v.* J. M. MYERS, F. L. IRISH,
AND R. B. SPILLMAN.

### *"Temporary Order of Injunction.*

"Now, on this 18th day of July, 1890, came on the above cause before the
circuit court for said district, and thereupon, agreeable to an order made here-
tofore, on the 15th day of July, 1890, in said cause, came on the application
of the complainants for a temporary injunction as prayed for in their bill of
complaint, service of which last-named order has been heretofore duly made
upon defendants. And thereupon came the said complainants, by Sam Kim-
ble, Esq., and D. C. Lockwood, Esq., their attorneys, and also came the de-
fendants, J. M. Myers, F. L. Irish, and R. B. Spillman, in person before me,
and as well by Hon. L. B. Kellogg, attorney general of the state of Kansas,
appearing in behalf of the said defendants, and the said bill of complaint
came on to be heard as aforesaid, and, being duly considered and argued by
counsel, and it appearing that the matters and things set out and alleged in
said bill of complaint are true, and that complainants are entitled to the relief
as prayed for so far as same relates to the defendants J. M. Myers and F. L.
Irish: It is therefore, on this 18th day of July, 1890, by said court consid-
ered and ordered that the said defendants J. M. Myers and F. L. Irish be,
and they are hereby, enjoined until the further order of this court from
further proceeding against the complainants, and from further attempting
to engage in any prosecution under color of their respective offices or
under color of the prohibitory law of Kansas against the said complainants,
George Hemsley and J. N. Linbocker, wherein they will seek to punish
said complainants for the sale of intoxicating liquors in the original pack-
ages only, or for keeping open the building on lot numbered 16, in ward
numbered two, (2,) in the city of Manhattan, Kansas, for the sale of
intoxicating liquors of and belonging to the firm of Glasner & Barzen, of
Kansas City, Missouri, in the original packages only; and that they are en-
joined from doing any act directly or indirectly towards declaring said place
of business a common nuisance, and seeking to abate and destroy the same
and the goods stored and sold therein on the ground that it is contrary to the
law of the land to maintain such a place, or on the ground that the keeping
of a place for the sale of intoxicating liquors in the original packages by the
importer or his duly-authorized agent is a common nuisance under the pro-
hibitory law of the state of Kansas and of the United States, and that they
be enjoined from taking any further steps in the district court of Riley
county, Kansas, in the injunction proceedings heretofore instituted, as set out
in said bill of complaint, or to interfere in any manner by prosecution, either
civil or criminal, to deprive the complainants from carrying on and conducting
in the said city of Manhattan, Kansas, the business of selling intoxicating liq-
uors in the original packages only, and as set out in the bill of complaint, and
from in any manner interfering with or seeking to shut up or abate the use
and occupancy of the said building in the manner as set out in the bill of
complaint.

[Signed] "C. G. FOSTER, Judge."

The opinion of the court ordering the temporary injunction to issue
in a similar case is reported. *Tuchman* v. *Welch,* 42 Fed. Rep. 548.
The case is now before the court on demurrer to the bill. Nine other

cases, differing in details, but involving the same principal questions, have also been submitted on demurrer.

*David Overmeyer, E. Hagan, Wheat, Chesney & Curtis, Henry L. Call, Sam Kimble, D. C. Lockwood,* and *Samuel D. Bishop,* for complainants.

*L. B. Kellogg,* Atty. Gen., *R. B. Welch,* and *H. C. Irish,* for defendants.

CALDWELL, J.   The bill is bad on three grounds.

1. Viewed in the light of a bill for an injunction to restrain the violation of a constitutional or common-law right, or the commission of a trespass, it fails to state a case cognizable in equity.   The complainants own no property, and have no property rights to be affected.   The owners of the liquor and of the house in which it was sold are not parties to the suit.   The *gravamen* of the bill, so far as relates to the complainant Hemsley, is that the alleged illegal acts of the defendants will have the effect to throw him out of his employment as agent for a Missouri firm for selling packages of beer and pint bottles of whisky at Manhattan, Kan. As to the complainant Linbocker, he, as agent for the owner, rented to the Missouri firm the room in which this business was carried on, and what damages he is to sustain by the alleged illegal acts of the defendants is not very apparent.   He neither owns the property, nor is he entitled to the rents.   It is difficult to perceive, therefore, upon what ground he can claim to have any property or pecuniary interest in the proceedings.   The bill alleges that the sales made by the complainant Hemsley, as agent, in this business, between the 21st day of June and the 3d day of July, 1890, amounted "in the neighborhood of $300 * * * at wholesale prices."   It is not stated in the bill whether the plaintiff Hemsley was compensated for his services as agent by commissions on his sales or was paid a fixed sum as wages.   The allegation in the bill that he will sustain "irreparable damage" is the statement of a legal conclusion.   The court will look back of that averment to the facts, and determine from them, for itself, whether the damage is irreparable. By the term "irreparable injury" is meant a grievous one, not adequately reparable by damages at law.   A man who has a full and complete remedy at law to recover the damages he suffers cannot be heard to say that the damage is irreparable.   It is obvious that Hemsley can be fully and completely compensated for his loss of commissions or wages by an action at law for his damages; and this is so, though it be conceded that he cannot procure other employment equally remunerative and respectable at Manhattan, or the same or other employment elsewhere.   His inability to get other employment might enhance the damages, but it does not make his case one of equitable cognizance.   There is no averment in the bill that the defendants are insolvent, and, in the absence of such an averment, their ability to respond to the plaintiff for all damages which he may sustain on account of their alleged wrongful acts will be presumed.   Section 723, Rev. St. U. S., declares that "suits in equity shall not be sustained in either of the courts of the United States in any

case where a plain, adequate, and complete remedy may be had at law." This section is merely declaratory of the pre-existing rule on the subject. The rule is elementary that, if the wrong complained of can be adequately compensated by a pecuniary sum, the remedy is at law, and an injunction will not issue. Kerr, Inj. 226. This rule is applicable to the case made by the bill, and fatal to it. In the case of *Wagner* v. *Drake*, 31 Fed. Rep. 849,—a case very similar to the one at bar,—the learned judge of the southern district of Iowa refused to grant an injunction in favor of the proprietor of a saloon to restrain the officers of the law, in Iowa, from instituting and prosecuting proceedings under the prohibitory law of that state, which it was alleged would destroy the plaintiff's business. Judge Love said:

"The chief loss of the saloon owner, if his business be closed by the action of the state court, is the value of the fixtures and the furniture used in his trade. These may be fully compensated in damages in actions at law."

Moreover, the plaintiffs can appeal from the orders and judgment of the district court to the supreme court of the state, and, if that court denies them any right or privilege claimed under the constitution or laws of the United States, they may appeal to the supreme court of the United States. These are all the rights that parties to a suit in any court can demand, and, in contemplation of law, they afford to every suitor, in connection with the remedy the law gives for illegal and unwarranted prosecutions, sufficient legal redress. High, Inj. §§ 28–30.

2. The bill seeks to enjoin criminal proceedings. A court of equity possesses no such power. This principle is settled by the uniform current of authorities in England for two centuries, and in this country from the foundation of its jurisprudence. The recent emphatic reaffirmance of the doctrine by the supreme court of the United States renders it unnecessary to do more than repeat the rule in the language of that court. The court said:

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government. * * * Mr. Justice Story, in his Commentaries on Equity Jurisprudence, affirms the same doctrine. Section 893. And in the American courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike, whether the prosecutions or arrests sought to be restrained arose under statutes of the state or under municipal ordinances. *West* v. *Mayor, etc.,* 10 Paige, 539; *Davis* v. *Society,* 75 N. Y. 362; *Tyler* v. *Hamersley,* 44 Conn. 419, 422; *Stuart* v. *Supervisors,* 83 Ill. 341; *Devron* v. *First Municipality,* 4 La. Ann. 11; *Levy* v. *Shreveport,* 27 La. Ann. 620; *Moses* v. *Mayor, etc.,* 52 Ala. 198; *Gault* v. *Wallis,* 53 Ga. 675; *Phillips* v. *Mayor, etc.,* 61 Ga. 386; *Cohen* v. *Commissioners,* 77 N. C. 2; *Oil Co.* v. *Little Rock,* 39 Ark.

412; *Spink* v. *Francis*, 19 Fed. Rep. 670, 20 Fed. Rep. 567; *Suess* v. *Noble*, 31 Fed Rep. 855." *In re Sawyer*, 124 U. S. 210, 211, 8 Sup. Ct. Rep. 482; High, Inj. § 68.

The cases at bar present in a forcible light the inability of a court of equity to deal with criminal prosecutions by injunction or otherwise, and the utter confusion and failure of justice that would inevitably result from the exercise of such jurisdiction. The answers and affidavits filed in some of these cases deny that the plaintiffs' sales were limited to original packages, and aver that they sold otherwise than in original packages, and on the Lord's day, and to minors, and that the business was conducted in such a manner as to make it a nuisance. If the court should assume jurisdiction of the cases, the chancellor, sitting without a jury, would have to hear and determine all these issues. And for what and with what result? If the chancellor should find the plaintiffs had violated the state law, as alleged by the defendants, he would be powerless to punish them for the offense. If he found the averments in the bill to be true, and granted a perpetual injunction in the terms of the temporary injunction in this case, the court could punish the defendants for a violation of the injunction, but it would have no power to punish the plaintiffs for afterwards selling in violation of the state law. Saloons are the source of a large percentage of the lawlessness and crime in the land, and their proprietors and managers are not particularly distinguished for their strict observance of the laws regulating or restricting the business. Suppose an original package vendor, after securing a perpetual injunction, as prayed in this case, sells liquor not in original packages, or otherwise violates the state law, what are the officers of the state court, whose duty it is to prosecute in such cases, to do? Must they apply to this court for leave to prosecute before commencing proceedings in the state court? Undoubtedly, if they should proceed without the previous leave of the court, the plaintiffs would charge them with a violation of the injunction, and ask the court to punish them for contempt; and the chancellor would again be required to try the same issues of fact, with a view to determine whether the state officers, including the judges of the state courts, should be punished for contempt, or whether such officers should graciously have leave to prosecute the plaintiffs for a violation of the criminal laws of the state. It is obvious that, if this court once assumed this jurisdiction, it would speedily draw to itself the supervision and control of all the criminal prosecutions in the state growing out of the traffic in liquor; for it is quite certain, if the court once enters upon this business, that every vendor of liquor in the state will claim to be a dealer in original packages only, and whenever a prosecution is commenced against him he will at once seek the shelter and protection of an injunction from this court. And the extraordinary spectacle would be presented of a United States court of chancery having its whole time taken up in keeping watch and ward over all the saloons in the state, protecting the proprietors and their clerks from prosecutions, until it should be first shown by the state to the satisfaction of

the chancellor that the state law had been violated, when the chancellor would make an order granting the state leave to prosecute for that violation.

3. Section 720 of the Revised Statutes reads as follows:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

This section, save the exception, is as old as the judicial system of the United States. Its prohibition is absolute and unqualified, except where the injunction is authorized by law in proceedings in bankruptcy. This exception serves to emphasize the prohibition as to all other cases. In cases where the jurisdiction of the court of the United States first attaches, the statute has no application; but in the cases we are considering the jurisdiction of the state courts first attached, and that fact, independently of the statute, according to a well-settled rule, is a bar to the jurisdiction of this court. To the observance of the rule enunciated by this section and other cognate rules we are indebted for the almost uniform harmonious relations that have existed between the state and the United States courts, from the foundation of the government down to the present time. The rule would probably have been the same independently of the statute. The state courts observe the rule towards the courts of the United States upon principle, and without any statute requiring them to do so. It is not merely a rule of comity, but an absolute rule of law, obligatory on the courts of both jurisdictions, and absolutely essential to the maintenance of harmonious relations between the state and the United States courts, and indispensable to the due and orderly administration of justice in both. Appeals may be taken in certain cases from the state courts to the supreme court of the United States, and in this way suitors claiming a right or privilege under the constitution of the United States, or an act of congress, or a treaty, may have the validity of their claim finally determined by the supreme court of the United States; but the district and circuit courts of the United States possess no appellate or supervisory jurisdiction over the state courts. The circuit courts of the United States and the state courts are each destitute of all power either to restrain or review the process or proceedings in the other. This rule has had the approval of the courts, lawyers, legislators, and laymen from the beginning of our system of government. The rule commends itself to the common sense of all mankind; and there can be no higher evidence of the soundness of a rule of law than that there is a universal *consensus* of opinion that it is sensible and just. The contention of the counsel for the plaintiffs is that the statutes and rules of law which have been adverted to, and which, in the opinion of the court, preclude it from exercising jurisdiction in these cases, have been repealed or abrogated, either wholly or partially, by section 1979 of the Revised Statutes of the United States, first enacted as a part of the civil rights bill, April 20, 1871. And the learned judge who deliv-

ered the opinion of the court on the motion for a temporary injunction seems to entertain the same view. The section reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The provision in the section, as originally enacted, conferring jurisdiction on the district and the circuit courts of the causes of action enumerated in the section, has been transferred to the head of jurisdiction of those courts respectively. The section does not repeal, limit, or restrict the previously existing rules affecting the relations of the state and the United States courts, nor does it abolish the distinction between law and equity, or change the rules of pleading or mode of proceeding in any respect. If the section was stricken out of the statute, the rights, privileges, and immunities of the citizens under the constitution and laws would remain to them, and the mode of seeking redress for a deprivation of these rights would be the same that it is now. The section declares that the mode of proceeding to obtain redress for a deprivation of these rights shall be by "an action at law, or a suit in equity, or other proper proceeding for redress." If the case is one which under the well-understood rules of pleadings is cognizable only at law, then an action at law is the "proper proceeding for redress;" and if it is one cognizable only in equity, then a suit in equity is the "proper proceeding for redress." No new mode of proceeding is enacted, and no new right created by this section. As it now stands in the Revised Statutes, it may be properly denominated a "declaratory" statute. And the statutes and rules of law defining and regulating the powers, relations, and jurisdiction of the state and the United States courts with reference to each other are not affected by this section in the slightest degree. The demurrer to the bill is sustained, the temporary injunction dissolved, and the bill dismissed for want of equity.

The same order is made in the other cases.