| | |
|---|---|
| 115 | 43 |
| f 117 | 300 |
| f 117 | 301 |

MICHELS, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 16—June 19, 1902.*

*Intoxicating liquors: License: Sale by brewer to consumer.*

Sec. 1548, Stats. 1898, provides that village and town boards and common councils may grant licenses "to such persons as they may deem proper to keep groceries, saloons and other places" for the sale of intoxicating liquors. Sec. 1550 provides that if any person shall sell intoxicating liquors in any quantity whatever, without first having obtained a license as required, he shall be guilty of a misdemeanor. *Held,* that a brewer cannot, without license, sell from his wagon direct to a consumer in his own town. DODGE and BARDEEN, JJ., dissent.

ERROR to review a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

For the plaintiff in error there was a brief by *Frawley, Bundy & Wilcox,* and oral argument by *C. T. Bundy.* They contended, *inter alia,* that a license to sell liquor at one place does not authorize the licensee to sell at another. 17 Am. & Eng. Ency. of Law (2d ed.) 235, and cases. The sale of liquor, within the meaning of the excise law, is made at the place where the liquor is delivered, without regard to where and in what manner it was ordered, or where or when payment was to be made therefor. 17 Am. & Eng. Ency. of Law (2d ed.) 297–301; *Sarbecker v. State,* 65 Wis. 171; *Carter v. Bartell,* 110 Iowa, 211, 81 N. W. 462; *Comm. v. Greenfield,*

121 Mass. 40; *Comm. v. Hugo,* 164 Mass. 161; *People v. Capen,* 26 Hun, 377; *Lafferty v. State,* 35 S. W. 374; *Comm. v. Holstine,* 132 Pa. St. 357. The legislature has made no provision for granting a license which would authorize any one to sell except at a designated, fixed place; and a license permitting plaintiff in error to sell beer at his brewery would not furnish protection for sales made from the wagon to various customers throughout the city. As the plaintiff in error did not keep a grocery, saloon, or other place where liquor was sold, the council was without authority or jurisdiction to grant him a license, even if applied for, and as sec. 1550 makes it an offense for one to sell without a license only when such license is required (authorized) under sec. 1548, no person can be convicted thereunder except the keeper of a *place where liquor is sold,* who alone can be licensed. In the absence of some express statutory provision to the contrary, the manufacture of intoxicating liquor is a lawful business, and the sale thereof in packages and casks, according to the custom of dealers in such articles, without a license, is also lawful in the absence of some express statutory provision requiring a license. 17 Am. & Eng. Ency. of Law (2d ed.) 353; *Lawson v. Comm.* 14 B. Monroe (Ky.) 225; *St. Paul v. Troyer,* 3 Minn. 291; *State v. Olson,* 38 Minn. 150; *Strauss v. Pontiac,* 40 Ill. 301.

For the defendant in error there was a brief by the *Attorney General,* and oral argument by *R. F. Hamilton,* second assistant attorney general.

WINSLOW, J. The plaintiff in error is a manufacturer of beer in Eau Claire, and was convicted under sec. 1550, Stats. 1898, because his agent sold bottled beer to a consumer in Eau Claire from his wagon, the plaintiff in error having no local license. The claim is that the manufacture of beer is a lawful business, and that he who engages in such business must have the right to dispose of his product unless such

right has expressly been taken away by statute, which it is claimed has not been done in this state. The question is one of the proper construction of our own statute in the light of such decisions as have been made bearing on the subject. Our statute (sec. 1548, Stats. 1898) provides that village and town boards and common councils may "grant license . . . to such persons as they may deem proper to keep groceries, saloons and other places within their respective towns, villages or cities for the sale of strong, spirituous, malt, ardent or intoxicating liquors" for certain prescribed license fees. The section contains no provision requiring that the liquor sold shall be drank upon the premises. Sec. 1548a provides for the granting of permits to registered pharmacists for the sale of strong, spirituous, and ardent liquors in quantities less than one gallon for medicinal, mechanical, or scientific purposes only, *and not* to be drank on the premises. Sec. 1549 provides for the giving of a bond, with sureties, by an applicant for a license under sec. 1548, conditioned for the keeping of an orderly and well-regulated house, and for the observance of the laws. Sec. 1550 provides that:

"If any person shall vend, sell, deal or traffic in, or for the purpose of evading any law of this state, give away, any spirituous, malt, ardent or intoxicating liquors or drinks in any quantity whatever, without first having obtained a license or permit therefor as required by this chapter, he shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished therefor," by fine or imprisonment as prescribed.

The argument is that the license provided for by sec. 1548 is a license to keep a *place* for the sale of liquor, and that by the terms of the section it can only be granted to persons who keep a grocery, saloon, or other similar place; that sec. 1550 only punishes those who sell liquor without having obtained the license or permit required by secs. 1548 and 1548a; that a brewer who keeps no saloon cannot obtain a license under

sec. 1548, and that only those who can obtain such license, namely, those who keep groceries, saloons, or other like places, can be punished under that section. On the other hand, the claim is that sec. 1550 prohibits the sale of liquor by *all persons* save such as have obtained the proper license or permit.

The question is not without some difficulty, especially in view of the decision of this court in the case of *Scanlan v. Childs,* 33 Wis. 663. In that case it appeared that a brewer in Janesville sold beer in casks at wholesale to retail dealers in that city, and it was held that he could rightfully do so without license, on the ground that the manufacture of beer was a lawful business, and that the statute only applied to the vending of liquors at wholesale or retail by persons who buy for that purpose, and not to sales by manufacturers of their own product in quantities to dealers in the usual course of trade. At the time this decision was made the law as to the obtaining of licenses was somewhat different from the present, in that it provided for two kinds of licenses,—one for the keeping of groceries, saloons, or other places for the sale of liquors to be drank on the premises in quantities less than one gallon; and another for the licensing of persons to sell liquors not to be drank within their houses or on the premises. The section which described the offense and prescribed the penalty was, however, identical in all essential particulars with sec. 1550, *supra.* 1 Tay. Stats. pp. 728–730, ch. 35, secs. 1, 2, 5.

The next case involving the question of the application of the statute to manufacturers was that of *Peitz v. State,* 68 Wis. 538, 32 N. W. 763. At this time the law governing the subject was contained in ch. 296, Laws of 1885, and it was substantially identical in its essential particulars with the law in force when the *Scanlan Case* was decided. In the last-named case it appeared that a brewer in one place had established a depot at another town fifteen miles distant, where he

sent beer to be stored and sold by an agent to such persons as desired to purchase; and such agent, having sold a keg of beer directly to a consumer without local license, a conviction under a section identical with sec. 1550 was sustained. The case of *Scanlan v. Childs* was commented upon in terms indicating dissatisfaction with it, and it was said that all members of the court were opposed to any extension of its doctrine to any case not fully brought within it. As the *Peitz Case,* however, was different in its facts, in that the sale was made directly to the consumer at a place distant from the factory, the court did not feel bound by the *Scanlan Case,* and held that the words, "if any person shall vend," etc., were so broad as to cover the defendant. Two of the justices, including the present chief justice, did not concur in the reasoning of the court by which the case was differentiated from the *Scanlan Case,* and expressed their belief that it was fully within the *Scanlan Case,* and that the latter case should be either overruled or its doctrine applied.

The last case touching the question is that of *Mayer v. State,* 83 Wis. 339, 53 N. W. 444, where a brewer in Milwaukee established an agency at Neenah, and sold a half barrel of beer, without local license, to a licensed saloon-keeper, and the conviction was affirmed without discussion save a reference to the *Peitz Case* and the statement that no distinction is made in the law between a sale to a consumer and to a dealer. The law at this time was the same in all essential particulars as in 1886, when the *Peitz Case* was decided.

Since the last decision cited the law has been changed so as to provide but one form of license, and the distinction between licenses for the sale of liquors to be drank upon the premises and not to be drank upon the premises has been abolished. It is not perceived that this change affects the question at issue here.

The *Scanlan Case* not having been overruled, but limited to its own exact facts, the condition of the law as deduced

from the three cases cited would seem to be that a brewer may lawfully sell without license to a licensed dealer in his own town, but that he cannot establish a depot in another town, and sell by his agent, either to a consumer or a dealer, in that town, without license. The present case, however, involves a still different question, namely, whether he can, without license, sell from his wagon direct to a consumer in his own town. We think this question must be answered in the negative. The argument used in the *Scanlan Case,* if fully carried out, would doubtless prevent a conviction in the present case, but that argument has been very seriously trenched upon, if not in effect repudiated, by the two subsequent cases cited, and we feel no disposition to rehabilitate it. When the legislature says that "if *any* person" shall sell liquors without a license he shall be guilty of a misdemeanor, we feel inclined to take them at their word, and not undertake to spell out a way by which the word "any" is to be deprived of its well-understood meaning, and held to mean any of a certain class of persons. *Ita lex scripta est.* If the law needs changing, let the legislature change it. That is not our function. The defendant is certainly included within the words "any person." He has sold malt liquor to a consumer without license. He comes directly within the plain words of sec. 1550, and hence was properly convicted.

*By the Court.*—Judgment affirmed.

DODGE, J. I cannot avoid the conviction that the decision in this case amounts practically to *ex post facto* legislation, and that thereby burdens are cast upon one of the important industries of the state, and the persons engaged therein are made criminals against the meaning of the legislature as fixed and established by fifty years of construction, both practical and judicial. In 1851 (Laws of 1851, ch. 162, secs. 1, 2, 5) the legislature vested authority in municipal officers to grant licenses—first, to those who kept saloons, groceries, and other

like places for the sale of liquor in quantities of less than one
gallon, to be drank on the premises; second, to any person to
sell liquor not to be drank on the premises. This legislation
was retained through the revision of 1858 onward, applied
practically so as to recognize that it was not intended to pre-
clude brewers from selling their product in the customary
manner of their business, not to be drank in or about the
manufacturing premises, but to be used at other places by
other persons. The question then came before this court in
*Scanlan v. Childs,* 33 Wis. 663, and this court, at the pen of
DIXON, C. J., confirmed that construction, holding that the
manufacture of beer was a lawful business, having received
long recognition from the state authorities, and being spe-
cifically licensed as such by the federal government; that in-
herent in a lawful manufacture was the right to sell the
product thereof, and that only by clear terms could a purpose
be ascribed to the legislature to limit or control that right;
and that the long practice of noninterference with the right
by brewers under the then existing excise statutes precluded
belief in any such purpose. True, that case related to a sale
by a brewer to a retail dealer, but upon cogent and unanswer-
able reason this court said in *Mayer v. State,* 83 Wis. 339,
53 N. W. 444, that the statute made no difference between
sales to dealers and sales to consumers. This meaning of the
law, acquiesced in by the officers of the government already
for more than twenty years, and then solemnly declared by
this court, must certainly be ascribed to the legislature, when,
in the following year (ch. 179, Laws of 1874), in consolidat-
ing the excise laws, they re-enacted these provisions in substan-
tially the same words. No plainer case of construction by long
custom, by the court, and by the legislature itself can be con-
ceived. That state of the law is unchanged to-day, except
that licenses are now authorized only to those who keep
saloons, groceries, or other places for the sale of liquor. Of
course, the rule of *noscitur a sociis* would confine such

"places" to "like places." This only makes the inference of the exemption of the brewer from the license upon his ordinary sales not upon premises kept for the purpose all the plainer. Of course, a license can be issued only as authorized by the legislature. The ordinary brewer does not keep a grocery, saloon, or other like place. He therefore cannot obtain a license, and the effect of sec. 1550, Stats. 1898, in making sales without a license criminal, is in its terms to prohibit the brewer's business,—a result too absurd to be ascribed to the legislature of this state from anything short of direct declaration of that purpose. True, this court has held in two cases (*Peitz v. State,* 68 Wis. 538, 32 N. W. 763; *Mayer v. State, supra*) that a sale by the brewer's agent in original packages is forbidden in the absence of a license, in cases, however, where a place elsewhere than the brewery had been established for the sale, which brought the transaction within the terms upon which license might be granted, and involved a marked distinction from the general method of disposing of the product of manufacture at the place where conducted.

BARDEEN, J. I concur in the foregoing opinion by Mr. Justice DODGE.