DULUTH BREWING & MALTING CO. v. CITY OF SUPERIOR et al.

(Circuit Court of Appeals, Seventh Circuit. April 22, 1903.)

No. 947.

1. INTOXICATING LIQUORS—MUNICIPAL ORDINANCES—CONSTRUCTION.

Under the construction placed by the Supreme Court of Wisconsin on the general excise law of the state, the ordinance of the city of superior of November 25, 1895, requiring all dealers in liquors to procure a license from the city, which differs in no essential respect from the state law in its provisions, applies to a nonresident manufacturer who maintains a depot in the city from which sales are made by an agent, whether such sales are made to consumers or licensed dealers in the city.

2. SAME—CONSTITUTIONALITY.

A municipal ordinance requiring manufacturers of liquors maintaining a place for their sale within the municipality distinct from their manufactory to pay a license tax is not discriminative, within the fourteenth constitutional amendment, because it exempts manufacturers selling at the manufactory in quantities, in the usual course of trade.

3. SAME—INTERFERENCE WITH INTERSTATE COMMERCE.

Nor is such an ordinance invalid as in violation of the interstate commerce clause of the Constitution, as against a manufacturer of another state, who maintains a depot within the city, from which sales are made in the original packages, in view of the Wilson Act (Act Aug. 8, 1890, c. 428, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]), where it is in its terms such as to bring it within the police power of the state to regulate the business; and the fact that a license fee of $500 per year is required is not sufficient in itself to show that its purpose is to raise revenue, and not to regulate.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

The Duluth Brewing & Malting Company is a corporation of the state of Minnesota engaged in the business of brewing beer, having its only brewery in the city of Duluth, in that state. It maintained a warehouse in the city of Superior, Wis., where it stored its product, which was shipped into the state of Wisconsin for sale and distribution to defendant's customers in the city of Superior and elsewhere in Wisconsin, delivery being made in the original packages, and none of its product being sold to be drunk upon the premises.

On November 25, 1895, the city of Superior, the appellee, a municipality of the state of Wisconsin, claiming to act under authority of its charter (volume 2, Laws Wis. 1891, c. 124, p. 792), which authorizes its common council "to grant licenses for and regulate groceries, tavern keepers, keepers of ordinaries, saloons, victualing houses,—and all persons vending or dealing in spirituous, vinous or fermented liquors, and to prohibit and suppress the same; provided, that the license for so dealing in or vending spirituous, vinous or fermented liquors, shall not be less than five hundred dollars, any general law to the contrary notwithstanding;" and claiming also under authority of section 1548, c. 66, Rev. St. Wis. 1898 (Sanb. & B. Ann. St. Wis. vol. 1, p. 1140), which authorizes "each town board, village board and common council may grant license under the conditions and restrictions in this chapter contained to such persons as they deem proper to keep groceries, saloons or other places within their respective towns, villages or cities for the sale of strong, spirituous, malt, ardent or intoxicating liquors"—enacted

¶ 3. State laws interfering with interstate commerce, see note to McCanna & Fraser Co. v. Citizens' Trust & Surety Co., 24 C. C. A. 13.

an ordinance entitled "No. 287. An ordinance relating to licenses for the sale of intoxicating liquors," of which the following sections are material:

"Section 1. It shall be unlawful for any person to sell, give away, barter, furnish or dispose of in any manner, either directly or indirectly, or by agent or employee or otherwise, any spirituous, vinous, malt, fermented or intoxicating liquors, for any purpose whatever, without first having obtained a license therefor from the common council of the city of Superior as hereinafter provided.

"Sec. 2. All applications for license shall be in writing signed by the party applying therefor and shall specifically designate the building, giving the street and number of building, wherein such liquors shall be sold, and shall designate whether or not said building is owned by the applicant, and if not so owned from whom the same is rented; such application shall also state the names and occupations and place of residence of the persons who will become sureties on applicant's bond if the license is granted.

"Sec. 3. No license shall be granted to any person or persons until such person or persons shall have given a bond to the state of Wisconsin in the penal sum of one thousand dollars, with two or more sureties, who shall be resident freeholders of the city of Superior, and who shall each justify in double the amount of such bond over and above their debts and liabilities and exemptions, to be approved by the council; provided, that if the sureties on such bond shall be the same persons whose names accompany the application for license, the approval of such application shall be deemed to be an approval of such bond. Such bond will be conditioned that the person so licensed will not sell, give away, barter, furnish or dispose of in any manner, either directly or indirectly, any of the liquors above mentioned, at any place other than the place named in such license; that he will keep a quiet and orderly house and not permit gambling therein in any manner, or in any outhouse, yard or shed appertaining thereto, or permit or allow to be within the place where such liquor is sold under said license, or in any outhouse yard or shed appertaining thereto, any implements or devices used for the purpose of gambling; that he will not allow any minor in his saloon unless accompanied by parent or guardian; that he will not sell, give away, barter or otherwise furnish or dispose of any of the liquors above mentioned to any minor person having good reason to believe him to be such, unless upon the written order of the parent or guardian of said minor, or to habitual drunkards, or to persons intoxicated or bordering upon intoxication or in the habit of becoming intoxicated, or to any person to whom such sale is forbidden under section 1554 of Sanborn & Berryman's Annotated Statute of the State of Wisconsin and acts amendatory thereof; that he will close his saloon or place of business at or before the hour of twelve o'clock p. m. and keep the same closed until five o'clock a. m.; that he will keep his saloon or place of business closed on the first day of the week, commonly called Sunday, and on election days; that he will not serve, or suffer or permit to be served any of the liquors above mentioned in any room or place used for gambling, or wherein gambling is carried on in any manner or form, or by any device whatever; that he will in every particular conform to the requirements of the statutes of the state of Wisconsin and this ordinance, and to any general laws of the state and ordinances of the city that may hereafter be passed or be in force relating to the sale of intoxicating liquors; and that he will pay all damages that may be recovered by any person pursuant to section 1560 of said Annotated Statutes of the State of Wisconsin and acts amendatory thereof; and that he will observe and obey all orders of said common council relating to the sale of liquors.

"Sec. 4. No license shall be granted hereunder until the applicant shall have first paid to the city treasurer the sum of five hundred dollars ($500) and all such licenses so granted shall run from the first day of May of the year in which they are granted and shall expire on the first day of May following, and if any license is granted after the first day of May in any year the full amount of said five hundred dollars shall be paid."

"Sec. 10. Any person who shall violate any of the provisions of section one (1) of this ordinance shall, upon conviction thereof, be subject to a fine not less than fifty ($50) dollars nor more than one hundred ($100) dollars;

and any person who shall be guilty of any violations of the terms or conditions of this bond given as aforesaid, or shall violate any other provision of this ordinance not contained in section one, shall, upon conviction thereof, be fined not less than five ($5) dollars nor more than one hundred ($100) dollars, and upon any subsequent violation and conviction for the offense, shall be fined not less than ten ($10) dollars nor more than two hundred ($200) dollars; and upon any violation of the terms or conditions of such license or bond, each license shall be subject to revocation by the council in the manner provided by statute."

The appellant, challenging the validity of this ordinance, declined to take a license from the city, or to pay the annual license fee of $500, and thereupon filed in the court below its bill charging that the ordinance was invalid upon the following grounds: First, that the city was without authority to pass or enforce the ordinance; second, that the ordinance conflicts with the Constitution of the United States, subd. 3, § 8, in that it attempts to regulate commerce among the several states; third, that the ordinance is in violation of the fourteenth amendment to the Constitution, in that it denies to persons within the jurisdiction of the state of Wisconsin the equal protection of the laws; fourth, that the ordinance is oppressive, unreasonable, and discriminating; fifth, that the ordinance is in restraint of trade and tends to create monopoly; sixth, that the ordinance seeks only to raise revenue, and not to regulate or control brewers or wholesale liquor dealers or their business in that city; seventh, that the ordinance imposes a tax for revenue, and is not passed in the exercise of the police power of the city or of the state.

The bill charges that the city threatened and was about to institute suits against the appellant to recover the fine and penalty mentioned in the ordinance, and would, unless restrained, continuously, from time to time, bring such suits and proceedings against the appellant and its agents before the courts of the city of Superior, charging violations of the ordinance in selling beer at wholesale within the city without a license therefor, and will carry on a multiplicity of suits, thereby vexing and harassing the appellant, whereby it will be compelled to pay out large amounts in fines and penalties, and that property exceeding in value the sum of $2,000 will be taken from it by levy and sales made to collect such fines and penalties, and that thereby its business in that city will be totally destroyed. The bill prayed for a decree declaring the ordinance void and inoperative, and that the city and its officers be enjoined and restrained from enforcing it.

A demurrer was interposed to the bill, charging that the bill showed no cause of action in equity, that the court had no jurisdiction thereof, and that the complainant had an adequate remedy at law. The demurrer was sustained and the bill dismissed, and from the decree the Duluth Brewing & Malting Company appeals to this court.

George H. Noyes, for appellant.

Thomas E. Lyons, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

This cause proceeded to hearing without objection by either party to the jurisdiction of this court to entertain the appeal. The case involves the construction and application of the Constitution of the United States, and is also one in which a law of a state is claimed to be in contravention of the Constitution of the United States, and, within section 5 of the act establishing this court (Act March 3, 1891, c. 517, 26 Stat. 826 [U. S. Comp. St. 1901, p. 549]), could have been taken by appeal directly from the Circuit Court to the Supreme Court. Assuming, notwithstanding our decision in Holt v. Indiana

Manufacturing Company, 46 U. S. App. 717, 25 C. C. A. 301, 80 Fed. 1, that within the ruling in Carter v. Roberts, 177 U. S. 496, 20 Sup. Ct. 713, 44 L. Ed. 861, we are at liberty to decide as well the constitutional questions as the other questions involved, and since no objection has been raised to that course, we are not disposed to decline jurisdiction, as perhaps we would be justified in doing under the ruling in Carter v. Roberts, supra, and we proceed to determine the whole case.

1. Assuming, without deciding, that a bill in equity will lie to restrain the enforcement of an invalid ordinance of a municipality—touching which question the courts are not altogether at agreement (Ex parte Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402; Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648; Vicksburg Waterworks Company v. Vicksburg, 185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. 808; Davis & Farnham Manufacturing Company v. City of Los Angeles [decided March 2, 1903] 23 Sup. Ct. 498, 47 L. Ed. ——; Suess v. Noble [C. C.] 31 Fed. 855; Schandler Bottling Company v. Welch [C. C.] 42 Fed. 561; Hemsley v. Myers [C. C.] 45 Fed. 283; Minneapolis Brewing Company v. McGillivray [C. C.] 104 Fed. 258; Davis Manufacturing Company v. Los Angeles [C. C.] 115 Fed. 537; City of Hutchinson v. Beckham, 118 Fed. 399, 55 C. C. A. 333)—we are brought to the consideration of the objections urged to the ordinance.

If the question were res integra, the argument that the ordinance was only designed to apply to the sale of liquors to be drunk upon the premises would come with weight. The nature of the business, the evil sought to be restrained, regulated, or prohibited, the conditions of the bond required, are forceful to strengthen argument that the ordinance was so designed, and was not intended to regulate the business of vending the commodity while contained in original packages (State of Minnesota v. Orth, 38 Minn. 150, 36 N. W. 103); but we are bound to regard the construction which the Supreme Court of the state has placed upon this or like enactments. If we thought that the court had misconstrued the statute, we would not be at liberty to therefore set aside its judgment. Crowley v. Christensen, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620; Stutsman County v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227, 35 L. Ed. 1018; Forsyth v. City of Hammond, 166 U. S. 506, 17 Sup. Ct. 665, 41 L. Ed. 1095; Wade v. Travis County, 174 U. S. 499, 508, 19 Sup. Ct. 715, 43 L. Ed. 1060. We are not referred to any case in which this particular ordinance has been under review by the Supreme Court of Wisconsin;* but the ordinance is not different in any essential particular from the general excise law of that state (Sanb. & B. Ann. St. Wis. c. 66), and that law has been frequently spoken to by the Supreme Court, and has a settled construction stamped upon it (Scanlan v. Childs, 33 Wis. 663, 667; Peitz v. State, 68 Wis. 538, 32 N. W. 763; Mayer v. State, 83 Wis. 339, 53 N. W. 444; Michels v. State,

---

* Since this opinion was prepared the Supreme Court of the state, in the case of Joseph Schlitz Brewing Company v. City of Superior, 93 N. W. 1120, has handed down an opinion upon the very ordinance here involved, sustaining its validity, and holding it applicable to wholesale dealers in liquor.

115 Wis. ——, 90 N. W. 1096). In the last case Mr. Justice Winslow sums up the result of the decisions upon this subject as follows:

"The condition of the law as deduced from the three cases cited would seem to be that a brewer may lawfully sell without license to a licensed dealer in his own town, but that he cannot establish a depot in another town and sell by his agent, either to a consumer or dealer in that town, without license."

In Scanlan v. Childs the court, speaking through Mr. Justice Dixon, ruled that the excise law did not apply to sales by manufacturers of articles made by themselves and put up and disposed of in quantities to dealers, according to the usual course of such manufacture and of the trade connected with it. This ruling is criticised in the later decisions, and would seem to be shaken as authority, although the case has not been directly overruled. We are, however, not now concerned with that question; for the appellant does not come within that ruling, not being a manufacturer within the city whose ordinance is here in question. We are constrained, therefore, to hold, in deference to the ruling of the ultimate tribunal of Wisconsin, that the ordinance in question, with the possible exception stated, forbids the sale of liquors at wholesale or at retail by any one who has not obtained a license therefor.

2. It is alleged that the ordinance is obnoxious to the Constitution, in that it is discriminative; that with the construction placed upon the law by the decisions it exempts brewers manufacturing within the city from payment of license, while imposing the tax upon nonresidents. It is doubtless true, as said by Mr. Justice Field in Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. Ed. 923, that under the fourteenth amendment to the Constitution no impediment may be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances, and that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; but, in the exercise of the police power of the state, "legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." In Reymann Brewing Company v. Brister, 179 U. S. 445, 21 Sup. Ct. 201, 45 L. Ed. 269, a like law of the state of Ohio was under review at the suit of a foreign corporation. The statute there expressly exempted the manufacture and sale at the manufactory, and it was ruled that the law was not discriminative, the court remarking (page 453, 179 U. S., page 204, 21 Sup. Ct., 45 L. Ed. 269): "So, in the present case, the exemption is not confined to Ohio corporations or copartnerships, but extends as well to foreign corporations whose place of manufacturing is within the state of Ohio; and so, likewise, the tax is imposed on Ohio corporations which manufacture goods in other states, and establish places for their sale within the state of Ohio, or which, manufacturing within the state, establish places within the state distinct from the manufactory where their liquors are sold and delivered"—the court citing its former ruling in People v. Roberts, 171 U. S. 658, 662, 19 Sup. Ct. 70, 43 L. Ed. 323. See, also, Hennington v. Georgia, 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166.

We are constrained to the conclusion that this law is not discriminative within the meaning of the fourteenth amendment. Assuming that the decision in Scanlan v. Childs will be upheld, the ordinance, with the construction which flows from that case placed upon it, does not discriminate against the producer of another state. In the state of Wisconsin, no brewer located otherwise than in the city of Superior may establish a warehouse in that city and sell its product without a license, nor can a brewer in that city establish a like depot in another place and dispose of its product without a license. There is no intent discernible to discriminate against a citizen of another state. All are placed upon the same footing. If it be said that the brewer of the city of Superior is exempted from the license by this ordinance, it is also true that under the law he is not exempted if he seeks to dispose of his product in any other place within the state; and, as is said by the Supreme Court of the United States in the last case cited: "The incidental disadvantage that the foreign manufacturer is under * * * does not appear to arise out of any intention * * * to make a hostile discrimination against foreign manufacturers." It is a disadvantage shared in common with every brewer of the state of Wisconsin whose brewery is not established within the limits of the city of Superior. There are doubtless many reasons which induce the peculiar character of this legislation; but it is not discriminative in the sense of the constitutional amendment, but a legitimate exercise of the police power of the state, authorized by the charter of the city. Whether wise or not is not for us to consider.

3. It is alleged that the ordinance is invalid in that it contravenes the provision of the Constitution (article 1, § 8), that Congress shall have power to regulate commerce among the several states. It was held in Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, that the prohibitory liquor law of the state of Iowa was unconstitutional in so far as it prohibited the sale in original packages of liquors shipped from other states. But subsequently to that decision Congress enacted the "Wilson Act," so called (Act Aug. 8, 1890, c. 428, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]), that all liquors transported into another state or territory, or remaining there for use, consumption, sale, or storage, shall upon arrival be subject to the operation and effect of the laws of such state, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquor had been produced in such state, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise. The validity of this act has been sustained in Re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572; Rhodes v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088; Vance v. Vandercook Company, 170 U. S. 438, 445, 18 Sup. Ct. 674, 42 L. Ed. 1100. It is not disputed that, if the ordinance in question was enacted in the exercise of police power, it would not be in conflict with the interstate commerce provision of the Constitution. But it is claimed that the ordinance was passed, not with a view to regulation, but of revenue. It may be conceded that a state or a municipality, exercising the sovereignty of the state, may not, under the

guise of police regulation, exact a tax; that if revenue only is design-
ed, it is not a police regulation. It is doubtless true that the legisla-
tion must have reference to the supervision, control, and regulation
of some act or thing which may in some way injuriously affect the
peace, good order, health, morality, or safety of society; but we
are unable to say that it clearly appears upon the face of this ordi-
nance that the purpose of it was to exact a tax and not to impose a
license for regulation. The subject-matter is one peculiarly within
the province of state regulation. The abuse of the appetite is pro-
ductive of such evil tending to vice and immorality that the courts,
while zealous to protect the rights of property, should be alike careful
not to invade the province of the lawmaking power of the state in
the exercise of its police power to regulate those things which may
become potential to the injury of society. It may be that the sale of
liquor in original packages does not in itself require the same strict
regulation as does the saloon; but it is not improper for a local legis-
lature in view of the evil sought to be regulated, to impose upon the
wholesale traffic such regulations as will effectually prevent the abuse
of the right to sell at wholesale and to exercise the police power to
that end. It is not difficult for a wholesale dealer to sell at retail, and
the temptation so to do, in view of the character of the business and
the great profits arising therefrom, is ever present. It cannot be said,
therefore, as we think, that it was without the exercise of police power
to regulate the business, or to supervise the manner in which the appel-
lant sold its products within the city. The ordinance bears a just
and proper relation to the business in question, and cannot be said to
be a mere arbitrary imposition of a tax. We are not able to see
that the license imposed is so obviously excessive as to lead irresistibly
to the conclusion that it is exacted as a tax and not as a license for
regulation of the business. The elements entering into the amount
of the license fee are various, and we are not able to say that the
charge was so large and was so unreasonable as to demonstrate an
abuse of discretion, and require us to declare it a tax, and not a
license. Western Union Telegraph Company v. New Hope (decided
January 5, 1903) 23 Sup. Ct. 204, 47 L. Ed. ——.

The decree will be affirmed.